THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN ROBERTS, Defendant-Appellant.

(No. 54374;

First District—May 28, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Suzanne M. Kohut and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Brent F. Carlson, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

A jury found the defendant guilty of murder. He was sentenced to a term of twenty to thirty years. On appeal defendant contends: (1) the prosecution failed to prove defendant's guilt beyond a reasonable doubt; (2) the court erred in failing to give instructions on voluntary

and involuntary manslaughter; (3) the court erred in not granting a mistrial; and (4) the sentence was excessive.

Earl Fernell testified for the State that he was the husband of Catherine Fernell (hereinafter "deceased"). For about six or seven years she had lived with defendant and was living with defendant at the time of her death.

William R. Browne testified for the State that he lived in apartment 307 of the Mansfield Hotel. Deceased lived with defendant in apartment 309. On the night of decedent's death he heard five shots: two, an interval, two more, a shorter interval, and then one. About six or seven minutes later he saw the police in the hall outside of the apartments.

Edmund Woodard called by the State, testified that he lived in apartment 305. On the night in question he heard two shots then three more.

Officer Lynch testified for the State that upon reaching the third floor of the Mansfield Hotel he saw defendant in the hall. Defendant went into his room whereupon the witness and his fellow officers knocked on the door, ordered defendant out of the room and placed him under arrest. The witness then entered the apartment where he discovered a towel-covered body of a woman lying alongside the bed. Although the witness remained in the apartment approximately ten minutes he recalled no signs of a struggle.

Dr. William Sterner, a pathologist, was called by the State. He conducted an external and internal examination of the body of the deceased. The examination revealed three anterior wounds of entry and two pasterior wounds of exit. The entry wounds were made by a gun held within three feet of the body. The path of the bullets through the body was slightly downward from front to back. In his opinion the gun was probably held higher than the victim who was 5 feet 2 inches in height. Any of the wounds could have been fatal.

Officer Steward testified for the State that after ordering defendant into the hall the witness entered the apartment whereupon he found the body of a female lying on the floor near the bed. Partially under the right hand of the victim was a .45 automatic pistol. The room was untidy but bore no evidence of a struggle. His examination of defendant revealed a laceration on defendant's right thumb.

Detective Stuparitz testified for the State that he found at the right arm of the deceased a .45 pistol with the slide back and lying nearby, a broken handle of a gun. An examination of that handle revealed it to be free of blood. Pellets were found in various places throughout the room, one of which was under a rug beneath the bed, another under the body. The bullet found under the bed apparently passed through the bed clothing and mattress. Speckles of blood were found on the bed

clothing; blood stains were found under the body. Three shirts were found to have blood on them: one, freshly laundered, was found on the bed; a second, also freshly laundered was found in the washroom; and the third was found hanging out of a dresser drawer. Blood was also found in the toilet bowl and sink and on the clothing defendant was wearing. Defendant was also discovered to have a cut on the side of his right thumb.

Detective Renfroe, called by the State, testified that pellets and casings from bullets were found in various areas of the apartment. A bullet hole was found in the couch. The room was in a general state of disarray but no furniture was upset. The only knives found in the apartment were found with other eating utensils. Defendant was found to have a laceration on the side of his right thumb. Renfroe also testified each time a .45 pistol is fired the trigger must be pulled.

John Roberts testified on his own behalf. He had lived with the deceased for approximately the last eight of his fifty-seven years. On the night in question he came home from work, ate dinner and talked with deceased. She bathed and remained nude. One more of a series of recurring arguments broke out over their financial status. Deceased picked up a steak knife and slashed at defendant cutting his right hand. He wrestled the knife away from her, threw it aside and went into the washroom to try to stop the bleeding. Deceased then appeared with a gun. Defendant rushed her and the gun went off twice. As they struggled for the gun deceased fell against the bed and the gun went off "a bunch of times" whereupon deceased fell to the floor. Defendant, while in shock, went to the washroom, ran some water on his bleeding hand, picked up the furniture knocked over during the struggle, covered deceased with a towel and started to get dressed. He did not wipe the gun with a shirt. The police later took him to the hospital to have his hand sutured.

Detective Renfroe was called in rebuttal by the State. He stated that evidence technicians at the scene dusted the weapon for fingerprints while he looked on. No fingerprints or foreign matter were visible on the weapon. He knew of no oily substance on the pink shirt.

■■ Defendant first contends that the prosecution failed to prove him guilty beyond a reasonable doubt. His position is untenable in view of the evidence brought out by the State. The prosecution showed the angle of entry was from above the wounds in the victim's chest. Each time a .45 pistol is fired the trigger must be pulled. Any one of the three wounds inflicted on the deceased was sufficient to kill her. Three police officers testified that there was no sign of a struggle at the crime scene. Neither fingerprints nor blood were found on the weapon although blood was found on defendant and throughout the apartment.

In an attempt to support his claim of innocence defendant testified in his own behalf as to the events leading to the victim's death. It is apparent that the jury did not believe defendant's version. The credibility of a witness is a matter to be determined by the jury and the jury's determination of defendant's guilt will be disturbed only when the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt. (*People v. Hairston* (1970), 46 Ill.2d 348, 365-366.) In the present case the evidence is not of such an unsatisfactory character as to raise a reasonable doubt of defendant's guilt.

Defendant's next contention revolves around the trial court's refusal to give certain instructions to the jury. Basing his argument on the purported existence of evidence which raised the issue of manslaughter, voluntary or involuntary, he contends that the lower court erred in refusing defense instructions on involuntary manslaughter and in failing to give *sua sponte* an instruction on voluntary manslaughter.

In considering the refusal of defendant's instruction on involuntary manslaughter [1] both parties cite cases which clearly indicate such instruction should be given when the record discloses evidence which, if believed by the jury, could reduce the crime to manslaughter. (See *People v. Latimer* (1966), 35 Ill.2d 178, 182.) The parties differ, however, as to what the record discloses; the State contending the evidence only supports a theory of death by accident or murder, the defense contending the testimony of defendant as to the struggle over the gun placed evidence in the record from which the jury could have concluded defendant's conduct to be reckless and negligent thereby supporting a finding of involuntary manslaughter. As stated in the statute (footnote 1, *supra*), involuntary manslaughter requires reckless conduct on the part of an offender. Recklessness is defined by Ill. Rev. Stat. 1967, ch. 38, sec. 4—6 as follows:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

Defendant's narration of the events, if believed, reveals no reckless conduct on his part. While washing the knife wound allegedly inflicted by

---

[1] Ill. Rev. Stat. 1967, ch. 38, sec. 9—3 (a):
A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly.

the deceased, defendant was confronted by the deceased brandishing a pistol. In defendant's attempt to disarm the deceased the weapon discharged. Without evidence supporting the essential element of recklessness there was no basis for the court to have an instruction on involuntary manslaughter.

Turning to the appropriateness of the lower court's failure to give an instruction on voluntary manslaughter [2] of its own initiative, we find no error. This matter was extensively considered in *People v. Taylor* (1967), 36 Ill.2d 483, 487-492, where the court held that it is within the trial judge's discretion whether or not a manslaughter instruction should be given on the court's own initiative in a murder trial even where there is evidence in the record which would be sufficient to sustain a conviction of manslaughter. After failing to request an instruction on voluntary manslaughter the defendant cannot complain that the trial judge erred in not offering such instruction *sua sponte.*

■■ Defendant also urges that the reference by a State's witness to the victim's death as "murder" was ground for a mistrial. In response to a question the witness said, "I saw her the day before she was murdered." Defense counsel objected moving that the answer be stricken and mistrial be ordered. The court instructed the jury to disregard the witness' statement but denied the motion for a mistrial. Later the same witness responded to another question by saying he saw the deceased again "the night the murder was [sic]." An objection was made and sustained with the jury again instructed to disregard the answer. Defendant also contends the question "Have you been present on the scene of other homicides?" addressed by the prosecutor to Detective Renfroe to which an objection was made and sustained was improper. The court finds no error here which could have reasonably affected the verdict. A conviction will not be reversed merely because improper remarks were made unless defendant can show prejudice arising from those remarks. (*People v.*

---

[2] Ill. Rev. Stat. 1967, ch. 38, sec. 9—2:

    (a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

      (1) The individual killed, or

      (2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

    (b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, (justifiable use of force) but his belief is unreasonable.

*Franklin* (1953), 415 Ill. 514, 521.) Where an examination of the entire record shows the conviction of defendant firmly resting on substantial evidence defendant cannot claim prejudice resulting from inconsequential remarks contended as error. That the present case reveals such an evidentiary basis for defendant's conviction is clear from the facts brought out at trial, which we have found constitutes proof of guilt beyond a reasonable doubt.

Defendant next calls the following colloquy to our attention:

"PROSECUTOR: Where did you see [defendant] that night?

DETECTIVE STUPARITZ: We attempted to interview him."

Defense counsel immediately objected, moved that the answer be stricken and moved for a mistrial. The court denied the motion for a mistrial but instructed the jury to disregard the answer as not responsive to the question. Defendant contends that the court erred in denying a mistrial on the ground that this testimony implied to the jury that defendant refused to make a statement at the time of his arrest. We find no prejudice arising from the statement in the instant case, nor error in the court's rulings in regard thereto. In *People v. Lewerenz* (1962), 24 Ill.2d 295 the Supreme Court stated at page 299:

> "[A]n accused is within his rights when he refuses to make a statement, and the fact that he exercised such right has no tendency to prove or disprove the charge against him, thus making evidence of his refusal neither material or relevant to the issue being tried."

This is not one of those situations in which the prosecution attempts to prove defendant guilty by showing he refused to make a statement. There was no elaboration which would indicate defendant actually did refuse to make a statement. The question was asked as part of a continuing exchange between the prosecution and Stuparitz wherein Stuparitz was testifying as to his observations at the crime scene and of defendant at the police station.

Defendant also contends that insinuations made by the prosecution denied his right of confrontation and cross-examination and was proper grounds for a mistrial. This contention arises out of questions by the prosecutor as to whether defendant wiped the gun with a pink shirt and whether he laid the gun under the victim's arm. In support of that position defendant cites *People v. Nuccio* (1969), 43 Ill.2d 375, where the opinion set out at length some nine pages of insinuations none of which were supported by rebuttal testimony. The *Nuccio* case is readily distinguishable from the case at bar. Here we find no barrage of insinuations otherwise unsupported by the record; but rather an exchange between defendant and the prosecutor where defendant was asked whether

he wiped the gun and placed it under the arm of deceased. The basis for prosecutor's questions was found in the subsequent testimony of Detective Renfroe where it was pointed out that no fingerprints or foreign matter were found on the weapon at the crime scene. There was therefore no prejudice by the prosecutor in his asking of the defendant the above-mentioned questions.

Further complaint is made by defendant over the refusal of the court to grant a mistrial after the prosecutor, during closing argument, rubbed the .45 pistol with the pink shirt, both items being previously admitted into evidence. This was done to demonstrate the State's theory of the case that defendant wiped the gun clean after the shooting. The prosecutor may not place before the jury during his closing arguments facts not based upon evidence in the case. In the absence of evidence supportive of his theory it would therefore be improper for the prosecutor to argue to the jury that defendant wiped the gun rendering it free of fingerprints and other foreign matter. (*People v. Beier* (1963), 29 Ill.2d 511, 516-517.) Such impropriety would exist whether the argument was made orally or by way of demonstration. In the present case, however, the gun was found free of fingerprints and foreign matter. Such was the testimony of the rebuttal witness called by the State as to his observations at the crime scene. We cannot agree with the defendant when he states a mistrial should have been granted on this point where evidentiary foundation of the prosecutor's argument is found. Nor can we agree with defendant in his contention that comments by the prosecutor during final argument about the power of the weapon found at the crime scene were improper in view of the wide latitude allowed during final argument and the instruction by the court to the jury concerning the non-evidentiary nature of final argument.

Defendant next argues that the court erred in permitting Detective Renfroe, who was in the courtroom during the entire course of the trial by express permission of the court, to testify in rebuttal in face of a pretrial order to exclude witnesses. As defendant was nearing the end of his testimony the prosecution noticed that an evidence technician who was to have testified in rebuttal inadvertently strayed into the courtroom. The defense objected to the technician testifying, and the objection was sustained. Detective Renfroe was then allowed to testify, over defense counsel's objection, as to his observations at the crime scene. This cannot be considered as error in light of the holding of the Supreme Court in *People v. Adams* (1968), 41 Ill.2d 98, 100-101, where the court approved the common practice of trial courts in excepting from the motion to exclude, one witness for the State. Frequently that witness is a police officer.

■■ Defendant's remaining contention relates to the sentence of twenty

to thirty-five years imposed upon him which he contends was excessive and harsh. We find this contention to be without merit. When the sentence is within the limits prescribed by the legislature it will not be reversed unless it is at variance with the purpose and spirit of the law or in excess of the proscriptions found in the Illinois Constitution. (*People v. Taylor* (1965), 33 Ill.2d 417, 424 and *People v. Miller* (1965), 33 Ill.2d 439, 444-445.) Because this sentence meets the standard set by the Supreme Court we find no reason to reduce it.

The judgment is affirmed.

Judgment affirmed.

ENGLISH, P. J., and DRUCKER, J., concur.