THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE JOHNSON, Defendant-Appellant.

Third District No. 74-218

Opinion filed January 30, 1976.

James Geis and Verland Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial, the defendant, George Johnson, was convicted of the crime of burglary. He was sentenced to a term of not less than 6 nor more than 18 years in the Illinois State Penitentiary.

On this appeal, defendant contends: (1) the prosecutor misstated the evidence during closing argument as a result of which the jury could infer the requisite intent, thus depriving defendant of a fair trial; and, (2) the prosecutor's closing argument contained a reference to the defendant's failure to testify.

The indictment charged that defendant burglarized the home of Mrs. Mayme O'Mare. At the trial, the evidence established that Mrs. O'Mare normally spent about 6 months of each year in Florida. Before going, she would leave a key to her home with a neighbor, Edna Stone, who would occasionally check the home to see that things were in order. Another individual, Raymond Boswell, took care of the yard work for Mrs. O'Mare during her vacation. Both Stone and Boswell testified that the O'Mare home was secure on their last visits in early January, 1973, and that they had not given anyone permission to enter the home.

Phyllis Hall, another neighbor of Mrs. O'Mare, testified that on January 10, 1973, she noticed a car drive slowly up and down the street on which the O'Mare home was situated. The driver parked the car, walked around the O'Mare home, knocked on or peered through the front door and then went to the rear of the home. Phyllis Hall testified that the driver "looked like a man" and wore a coat similar in length to a coat later identified as that of the defendant.

Phyllis Hall called the police and Officer Blair responded in a few minutes, coming first to see Mrs. Hall, who recounted what she had observed. Blair then proceeded to the O'Mare home.

Blair checked the home, found no one there but did discover broken glass and a ripped screen on two doors in the rear. Checking inside the house, the officer discovered that several bedroom drawers "had been pulled out," but later noted that he meant no more than that the drawers "simply weren't closed." Pry marks were found on a wooden cupboard in the basement; but there were no fresh shavings nearby, leading the officer to conclude that the locks could have been broken at sometime in the past. Officer Blair was later joined on the scene by Officer Poynter. Poynter testified that a 1965 blue Buick was found parked in front of the O'Mare home. The police checked to determine who owned the car, and later, upon questioning the defendant at the police station, learned that the Buick was owned by the defendant. During this questioning, the defendant noted that he owned but did not drive the car since he had no driver's license, and he volunteered that a Miss Daisy Brown kept the car for him.

Daisy Brown testified that the defendant was her boyfriend and that he did own a 1965 Buick. He did have a driver's license, did drive the car and, in fact, had driven the car on January 10, 1973. At 9 p.m. on that day, the defendant called her and told her to report the car stolen to the police. Miss Brown also told Officer Poynter that the defendant gave her a set of car keys later that evening at the police station.

Glass samples, found by each door, were taken from inside the house and compared with a piece of glass taken from the heel of one of the defendant's boots. At the trial a technician from the State Crime Lab testified that the samples "could have had a common source."

The defendant did not testify in his own behalf.

During closing argument the prosecutor noted on several instances that the home, the bedroom and the bedroom drawers had been "ransacked" by an intruder. He also remarked that the glass samples had been compared and "did, probably, come from the same common source." Various references were also made to "trinkets that were taken" from the O'Mare home. Defense counsel in his closing argument questioned whether there was any testimony concerning missing articles. The prosecutor persisted though, contending in rebuttal that articles had been taken.

■■ It is well settled that the prosecutor on closing argument may comment and argue upon the facts and circumstances proved in the case and may draw all legitimate inferences from those proven facts. (*People v. Burnett*, 27 Ill.2d 510, 190 N.E.2d 338.) It is equally clear however that assumptions and statements of fact not based upon evidence in the case may not properly be argued to the jury. *People v. Beier*, 29 Ill.2d 511, 194 N.E.2d 280; *People v. Roberts*, 133 Ill.App.2d 234, 272 N.E.2d 768.

■■ This argument by the prosecutor was highly improper since it was based on misstatements of evidence. The only evidence to support the "ransacking" was a statement by the officer that several bedroom drawers "had been pulled out," but in fact the officer later explained that the drawers "simply weren't closed." As to the references to "trinkets that were taken," the record shows that no evidence produced at trial supported this statement. There is a complete absence of any testimony that anything was taken from the O'Mare house. Under these circumstances the defendant did not receive a fair trial free from prejudicial error.

During the rebuttal portion of his closing argument the prosecutor also stated as follows:

> "Now, in this system that we have in this country, as I said earlier, we don't take people out and shoot them without a trial.

We don't shoot them anyway. The defendant has a right to a fair trial, he's got a right to a lawyer, if he can't afford one we give him a lawyer. These are all rights that he has. He has got the right of presumption of innocence by the Jury. You must presume him innocent until he is proven guilty to you. Those are wonderful rights that I whole heartedly agree with. He also has the right to confront witnesses, to have a witness come into this Courtroom, get up on this witness stand and look him right in the eye and look you in the eye and look the Judge in the eye and look everyone in the eye and tell their story and testify against him. He's got that right to confront that witness. That witness must come into this Courtroom."

The prosecutor continued:

"But that's a two way street, ladies and gentlemen, because he's supposed to confront you, too."

Defense counsel immediately objected and the court sustained the objection. The jury was not instructed to disregard the remark but received a general instruction at the close of the case that they were not to consider the defendant's failure to testify.

After the court sustained the defendant's objections, the prosecutor, referring to the fact that defendant was wearing sunglasses, asked the jury, "why can't you look into this man's eyes?" The prosecutor explained, "because he can't look you in the eyes, he can't look the witness in the eye and he can't face you."

Defendant contends the prosecutor's remark that the defendant is "supposed to confront" the jury was improper, since it can only be construed as a direct and unambiguous reference to the defendant's failure to testify. In support of this contention, the defendant relies primarily on the fifth amendment of the Federal constitution which was held to be violated in *Griffin v. California*, 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229, by direct prosecutorial comment on a defendant's failure to testify. Defendant also relies on Ill. Rev. Stat. 1973, ch. 38, par. 155—1, which provides in pertinent part:

"[A] defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

■■ The test in determining whether the prosecutor's remarks during closing argument violated the defendant's right to remain silent is "whether the reference was intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right

to testify." (*People v. Mills*, 40 Ill.2d 4, 237 N.E.2d 697.) Applying this standard to the instant appeal, we hold that the prosecutor's argument was improper and constituted an impermissible comment upon the defendant's right to decline to testify. *People v. Hopkins*, 124 Ill.App.2d 415, 259 N.E.2d 577.

Other errors are referred to, but in the view we have taken, we need not discuss them. For the foregoing reasons, the judgment of conviction is reversed and the cause is remanded to the circuit court of Peoria County, with directions that defendant be granted a new trial.

Reversed and remanded with directions.

STENGEL and BARRY, JJ., concur.