THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PHILLIP LYONS, Defendant-Appellant.

First District (1st Division)    No. 63076

Opinion filed December 13, 1976.

Jerome Rotenberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Phillip Lyons, was charged by indictment with the murder of Rufus Stinson and found guilty of that crime by a jury in the circuit court of Cook County. After a hearing in aggravation and mitigation, he was sentenced to serve not less than 25 nor more than 60 years in the Illinois State Penitentiary. Defendant appeals, contending that certain remarks made by the prosecution on final argument were improper and prejudicial; that the trial court improperly permitted evidence of defendant's refusal to answer questions after his arrest; that the evidence failed to establish his guilt beyond a reasonable doubt; that the trial court incorrectly instructed the jury; and that the trial court erred by permitting the prosecution to introduce improper rebuttal evidence.

On April 14, 1973, at approximately 9 a.m., Rufus Stinson was shot to death during an altercation with defendant, Phillip Lyons. The shooting occurred in a parking lot at 103rd Street near Michigan Avenue, Chicago, Illinois. Just after this incident, defendant left the scene in his automobile and proceeded to the Grand Crossing police station located at 75th and Maryland. There, after being given his *Miranda* warnings, he told Investigator Charles Grunhard, according to Grunhard, that Rufus Stinson had threatened him with a gun, that a fight had ensued and that the shooting was the accidental result of that fight. The gun which killed Rufus Stinson was never recovered. Defendant also told Investigator Grunhard, according to Grunhard, that he could not recall what, if anything, he had done with it after the shooting.

At trial, the State sought to establish that defendant owned the gun which killed Rufus Stinson, shot the deceased in cold blood and then disposed of the gun on his way to the police station. Defendant did not testify. In final argument to the jury, the assistant State's attorney commented on the disappearance of the alleged murder weapon:

"Where is that gun? I sure wish we had it. Only one man knows where that gun is and he's sitting right there. Phillip Lyons.

And I have not heard one stitch of evidence about that gun."

It is defendant's position that these comments were prejudicial since they improperly called the jury's attention to the fact that defendant had chosen not to testify and encouraged the jury to draw an inference of guilt from that decision. Section 6 of the Criminal Code of 1874 (Ill. Rev. Stat. 1971, ch. 38, par. 155—1) states in pertinent part the following:

" * * * [A] defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

The recognized test for determining whether a prosecutor's comment has violated a defendant's exercise of his right to remain silent under this

statute was set forth for the first time in *Watt v. People* (1888), 126 Ill. 9, 32, 18 N.E. 340, 350:

> "* * * [W]as the reference intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify?"

Here, the prosecutor directly referred to defendant by name and then unambiguously implied that defendant could have offered an explanation for the disappearance of the gun in question, but had chosen to remain silent. Defendant's objection to this argument was overruled. In our opinion, these remarks of the prosecutor constituted a deliberate effort to call the attention of the jury to the fact that defendant had elected not to testify. Accordingly, we find that they were improper and require that the judgment be reversed. (*People v. Burton* (1969), 44 Ill. 2d 53, 254 N.E.2d 527.) Because the comments of the State's attorney concerned the defendant's failure to testify and not his failure to produce physical evidence within his control, we feel that the State's reliance upon *People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645, is misplaced and inappropriate.

■■ Further, the remarks of the prosecutor concerned a material factor in defendant's case, the ownership of the missing gun. For this reason, we are unable to characterize their prejudicial effect as harmless beyond a reasonable doubt. (*People v. Cline* (1975), 60 Ill. 2d 561, 328 N.E.2d 534.) Unlike other cases where improper prosecutorial comments have been viewed as harmless, the proof of defendant's guilt in the instant case was hardly overwhelming. The accounts of the incident given by the State's two occurrence witnesses were fundamentally different. Carl Coleman, whose testimony at a preliminary hearing was read to the jury,[1] stated that defendant was seated in his car at the time the shooting occurred. Willie Edward Lee, Jr., a radio announcer for Radio Station WVON, testified that both men were struggling outside the car at the time the shot was fired. Walter Johnson and Walton Key, both witnesses for the defense, testified that the deceased provoked the fatal struggle by first assaulting defendant with a gun or what appeared to be a gun. The State argued that the shooting was unprovoked and deliberate. Such contradictions in the evidence make it impossible to discount the prejudicial effect of the prosecutor's remarks. Accordingly, this case must be remanded for a new trial. *People v. Martin* (1975), 29 Ill. App. 3d 825, 331 N.E.2d 311.

Defendant contends that two other elements of the State's final argument were improper. First, defendant refers to the prosecutor's unsupported pronouncement that defense witnesses Johnson and Key

---

[1] Coleman was killed in an automobile accident before the trial of this case.

were " * * * lying through their teeth"; second, to the prosecutor's allegedly inflammatory reference to the deceased's wife and children. The State argues, alternatively, that these remarks were proper, but that, if improper, any error was harmless. We have examined the record and conclude that, in view of the evidence, we cannot classify them as harmless error. In our opinion these remarks should not have been made and we presume they will not be repeated upon a retrial.

Defendant also argues that several additional errors were committed at trial. Although this case must be reversed and remanded for a new trial on other grounds, we choose to discuss those questions raised by defendant which may arise again at trial. The first claimed error is the failure of the trial court to inform the jury by instruction that to be culpable for the killing of Rufus Stinson under sections 9—1, 9—2 or 9—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, pars. 9—1, 9—2, 9—3), defendant must have acted "without lawful justification." The precise question raised by this omission was carefully reviewed in *People v. Wright* (1975), 32 Ill. App. 3d 736, 743-44, 336 N.E.2d 18, 24-25. There it was held that when an affirmative defense such as self-defense is raised, the jury should be informed by instruction that the State must prove beyond a reasonable doubt that the defendant was not justified in using deadly force to protect himself.

■■ In this case, defense witnesses Johnson and Key testified that the deceased, Rufus Stinson, threatened defendant with what appeared to be a gun and by that act precipitated the fatal struggle. In his final argument, the prosecutor summarized the testimony of these defense witnesses as follows:

> "You have heard two defendants—two witnesses for the defendant get up on the stand and say, ladies and gentlemen, take your choice. Rufus Stinson died as a result of a gunshot wound by accident, by reason of self-defense, by reason of proof or he shot himself, suicide."

IPI instructions Nos. 7.01, 7.02, 7.03, 7.04, 7.07 and 7.08, relating to the charge of murder and the lesser included offenses of voluntary and involuntary manslaughter, were read to the jury. None of these instructions states that to be guilty defendant must have acted "without lawful justification." Defendant tendered, but the court refused to read to the jury, IPI instruction No. 24.06 concerning self-defense. Reviewing all of the instructions together, we find that no instruction was given to insure that the jury understood that the State must prove beyond a reasonable doubt that defendant killed Rufus Stinson without lawful justification. In our opinion, the affirmative defense of self-defense was sufficiently raised by the testimony of defendant's witnesses (*People v. Warren* (1965), 33 Ill.

2d 168, 210 N.E.2d 507) and defendant's tendered instruction IPI No. 24.06 should have been given to the jury by the trial court. *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1.

■■ The second asserted error is the failure of the trial court to instruct the jury as to defendant's theory that Rufus Stinson's death was the accidental result of their struggle. While it is true that a defendant is entitled to have a jury consider any legally recognized defense which is supported in the record (*People v. Unger* (1975), 33 Ill. App. 3d 770, 338 N.E.2d 442), it does not follow that the trial court must give an instruction which is superfluous. In this case, the court instructed the jury that to sustain the charge of murder the State had the burden of proving beyond a reasonable doubt that defendant performed the acts which caused Rufus Stinson's death and that when he did so he intended to kill or to do great bodily harm to Rufus Stinson, or that he knew his acts would cause death or great bodily harm to Rufus Stinson, or he knew his acts created a strong probability of death or great bodily harm to Rufus Stinson. Plainly, this instruction informed the jury that if they found that Mr. Stinson's death was unintended, then the State had not sustained its charge of murder. An additional instruction to that effect would have been unnecessary. The trial court acted properly in refusing it.

■■ The third alleged error is the failure of the trial court to instruct the jury that they were not bound to accept the opinion of Dr. Edward Shalgos, the pathologist who performed the autopsy on the body of Rufus Stinson. Dr. Shalgos testified that in his opinion the gun which killed Rufus Stinson was at least 12 to 18 inches from the deceased's face at the time it was fired and was not in the deceased's hands at the time of the shooting. Defendant tendered a non-IPI instruction that an expert's opinion was not binding upon the jury and that the jury was not obligated to accept the expert's opinion as to what the facts were. The trial court refused to give this instruction. Illinois Pattern Instructions—Criminal in section 3.18 recommends that no instruction be given on the subject of weighing expert testimony. It states that the credibility of expert testimony is a proper subject of final argument. Supreme Court Rule 451 (Ill. Rev. Stat. 1973, ch. 110A, par. 451) requires that if an instruction on a subject is not in IPI it is within the trial court's discretion to decide whether a non-IPI instruction should be given. In this case, if Dr. Shalgos' testimony was not based upon facts or was contrary to the evidence, those defects could have been remedied by timely objection (*Lyons v. Chicago City Ry. Co.* (1913), 258 Ill. 75, 101 N.E. 211; *Manion v. Brant Oil Co.* (1967), 85 Ill. App. 2d 129, 229 N.E.2d 171), by cross-examination and by final argument. The trial court's refusal to give defendant's instruction was proper and not an abuse of discretion.

■■ Defendant contends that the evidence was not sufficient to prove

his guilt beyond a reasonable doubt. We have carefully examined the record and it is our considered opinion that the judgment be reversed and the cause remanded for a new trial. (Compare *People v. Lonzo* (1974), 20 Ill. App. 3d 721, 315 N.E.2d 256, and cases therein cited.) Consequently, it is inappropriate for this court to express an opinion as to defendant's guilt or to analyze the evidence. *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295.

For the reasons stated, the judgment of conviction of the circuit court of Cook County is reversed and this cause is remanded for a new trial in accordance with the views expressed herein.

Judgment reversed and cause remanded for a new trial.

GOLDBERG, P. J., and SIMON, J., concur.