THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICK CARLSON, Defendant-Appellant.

Third District   Nos. 80-440, 80-207 cons.

Opinion filed July 31, 1981.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellant.

James R. May, State's Attorney, of Princeton, and Jeffrey W. O'Connor, State's Attorney, of Cambridge (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The defendant, Rick Carlson, appeals from his conviction for unlawful delivery of a controlled substance following a jury trial in the Circuit

Court of Bureau County. The defendant was subsequently sentenced to a four-year term of imprisonment. As a consequence of the defendant's conviction, the Circuit Court of Henry County revoked his prior sentences of probation for an unrelated conviction and sentenced the defendant to a concurrent four-year term of imprisonment. The issues presented on appeal are (1) whether the trial court erred in admitting evidence of the defendant's unrelated criminal activities, and if so, whether the error prejudiced the defendant, (2) whether the defendant was denied a fair trial when, during closing argument, the prosecutor misstated the evidence, and (3) whether the trial court erred in explaining to the jury its ruling on the inadmissibility of evidence in the form of a letter written by the defendant to a defense witness. We affirm.

The State in its case-in-chief called undercover police officer Robert Babczak to testify. On September 14, 1979, at about 10 p.m., Babczak had arranged to meet a person other than the defendant at a Princeton, Illinois, bowling alley to purchase some illegal drugs. About 45 minutes later, Babczak observed the defendant in the bowling alley bar. Babczak had met with the defendant on prior occasions and had engaged in discussion with him. When the prosecutor asked Babczak about the subject matter of those previous discussions, defense counsel objected, and the court sustained the objection. Babczak then continued his testimony. The defendant approached the undercover officer and asked him whether he wanted to buy some "downers or acid." After discussing the price, Babczak agreed to purchase 10 tablets for which he paid the defendant $30 in advance. At approximately 11 p.m., Babczak, the defendant, and a third person, identified to the witness as Dan Johnson, met in the bowling alley's recreational room. With the defendant looking on, Johnson removed 10 tablets from a plastic bag, placed them in a second bag, and handed that bag to Babczak, who then returned to the bar to wait for his previously arranged seller.

The second State witness, a forensic scientist for the Illinois Department of Law Enforcement, testified that she examined the tablets given to Babczak and found them to contain lysergic acid diethylamide (LSD).

The defense presented the testimony of five witnesses, all acquaintances of the defendant. According to their testimony, on the night in question the defendant and many others were at a party commemorating a friend who had recently died. The party was located about 3 miles from the bowling alley. All five witnesses said they saw the defendant at the party from 7:30 p.m. to approximately 2:30 a.m. Although each of the witnesses admitted smoking marijuana and drinking beer at the party, they claimed the drugs did not impair their perceptions.

During the cross-examination of one defense witness, Greg Jones, the prosecutor asked whether the defendant had also smoked marijuana that

night. The witness said yes. Defense counsel objected but was overruled. The prosecutor repeated his question and this time the witness replied, "Probably." Again defense counsel objected and was overruled. The prosecutor asked the same question for the third time and the witness responded, "No, not really."

Another alibi witness, the defendant's girlfriend, stated on re-cross-examination that she was responsible for contacting defense witnesses to ascertain whether they recalled the night in question. She was then asked whether she had received a letter from the defendant requesting her to ask Brad Jones to testify for the defendant at trial that Jones saw the defendant at the party until after midnight. Defense counsel objected to the question, arguing that it exceeded the scope of cross-examination. Out of the jury's presence, the court ruled that the State's attorney could only ask the witness whether the defendant told her to arrange for Jones to testify favorably; the letter itself was inadmissible. Again in front of the jury, the state's attorney asked the witness whether she had received a letter from the defendant from his jail cell, to which she replied in the affirmative. When asked whether she could recall the contents of the letter, defense counsel objected. The trial judge then addressed the jury:

> "Quite simply, so the jury will understand, we're not going to get into the constitutional argument here on using of the letter with the U.S. Mail and sensor [*sic*] of mail and that sort of thing. So that is why we're doing it."

After a sidebar conference, the trial judge refused to permit any further questioning of the witness concerning the letter.

In rebuttal, the State offered the testimony of Babczak and three other officers. Each recalled observing the defendant at the bowling alley during the night in question. Shortly after the alleged transaction, a brawl occurred which the defendant attempted to break up. Several police officers were called and they spoke to the defendant concerning the fight.

Following a conference on the instructions, counsel addressed the jury with their closing arguments. The state's attorney, in referring to Babczak's direct testimony, said, "Now Mr. Baczak testified that he had talked to the defendant on previous occasions, that they discussed drugs on previous occasions and that the defendant approached him to make the sale." Defense counsel objected, arguing that the contents of the prior discussions were not in evidence as the state's attorney claimed. The court observed, "The jury heard the evidence." The jury subsequently found the defendant guilty of unlawful delivery of a controlled substance.

■■■ The defendant first contends that (1) the court erred in admitting evidence of the defendant's unrelated criminal activity (smoking marijuana at the party) and (2) the error independently, or cumulatively with other alleged errors, caused prejudice to the defendant. The rule in Illinois

is well-established that evidence of criminal activity unrelated to the charge for which the accused is being tried is inadmissible to establish an inference that the accused conformed to his demonstrated criminal propensity. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238; *People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) Nevertheless, evidence of other criminal activity becomes relevant and thus admissible to demonstrate knowledge, intent, motive, design, plan or identification. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) In the case at bar, the State claims that questioning a defense witness on whether the defendant smoked marijuana while attending the party was necessary to determine the witness' knowledge of the defendant's presence at the party during the evening. Such an argument misconstrues the limited exception to the exclusion of evidence of unrelated criminal activity. The witness' recollection of whether the defendant smoked marijuana while at the party in no way either establishes or refutes time and place proximity. (See *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) Therefore, the court incorrectly admitted the evidence of the defendant's unrelated criminal activity.

■■ Our next inquiry is whether the error, by itself or cumulatively with other alleged errors (see, *e.g., People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058), constituted harmless error. The defendant argues that the improper evidence of unrelated criminal activity might have contributed to his conviction and absent such evidence the jury might have believed the defendant's alibi. Although evidence of unrelated criminal activity may tend to "over persuade" the trier of fact, a reviewing court will not reverse the finding of the trial court where "the properly admitted evidence is so overwhelming that no fair minded jury could have voted for acquittal * * *." (*People v. Lindgren* (1980), 79 Ill. 2d 129, 141, 402 N.E.2d 238, 244.) Such was the situation in the case at bar. The State adduced testimony of an undercover police officer who witnessed the defendant solicit, arrange, and receive payment for the sale of the LSD. The defendant's alibi consisted of several of his friends who claimed to have seen the defendant attending a party during the same time the transaction was supposed to have occurred. In rebuttal, several police officers stated they observed the defendant at the bowling alley, both before and after the sale. Upon reviewing the properly admitted evidence, the record clearly shows sufficient evidence for the jury to reject the defendant's alibi and return a verdict of guilty, regardless of the error.

■■ The defendant's second objection is that during closing arguments the state's attorney misstated the evidence and that such error constitutes reversible error. Specifically, the state's attorney told the jury that Babczak and the defendant had discussed the sale of illegal drugs previous to the September 14, 1979, transaction. In fact, the record

contains no evidence to support this allegation. Statements of fact that are unsupported by the evidence may not be properly argued to the jury. (*People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280; *People v. Johnson* (1976), 35 Ill. App. 3d 666, 341 N.E.2d 443.) The State agrees the prosecutor misstated the evidence, but argues the remark cannot be considered prejudicial. We agree. In light of the overwhelming evidence of the defendant's guilt, the isolated misstatement could not have affected the jury's verdict either individually or in concert with the evidence of the defendant's unrelated criminal activity. Moreover, the jury was twice informed that the closing arguments did not constitute evidence—once by instruction and once by the state's attorney preceding his closing argument. Thus, the possibility that the jury even considered the misstatement, much less was affected by it, was slight.

The defendant's third objection is that the trial court erred in explaining to the jury its ruling on the inadmissibility of a letter written by the defendant which instructed his girlfriend to arrange for a witness to testify in the defendant's favor.

According to the defendant, the trial court's explanation created an impression on the jury that the State had some probative evidence against the defendant which was being withheld by a legal technicality. This impression, the defendant's argument concludes, caused the jury to speculate negatively about the contents of the letter and, thus, prejudiced him. We disagree with this assessment. First, regardless of whether the court explained its ruling to the jury, the jury might well have been left with the impression that they were being denied probative evidence of the defendant's guilt. We do not believe that the trial court, by explaining its ruling, exacerbated the impression. Second, even assuming the trial court was incorrect in deciding to explain its ruling, the error would not have affected the outcome of the defendant's trial in light of the overwhelming evidence of his guilt.

For the foregoing reasons, we affirm the judgment of conviction entered in the Circuit Court of Bureau County. We also affirm the order of the Circuit Court of Henry County revoking the defendant's previously imposed probation and sentencing him to a concurrent term of 4 years imprisonment.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:
I respectfully disagree with the result reached by my colleagues. In my opinion the three areas discussed in the majority opinion when

considered together did deprive the defendant of a fair trial, and I believe he should be granted a new trial.

I think that from the facts as set forth in the majority opinion it can well be concluded that there is ample evidence which, if believed by the jury, was sufficient to support his conviction beyond a reasonable doubt. It may also be inferred from the facts the evidence is contradictory, the credibility of witnesses is the principal issue in the case, and if the issues relating to credibility were resolved in favor of the defendant by the trier of fact, a different result would have been reached. Thus, the fact of the errors, either actual or potential, is of primary significance.

With respect to the first issue relating to the admission of evidence of pot smoking at the party the majority decides, and I agree with the decision, that this area of inquiry was erroneous. Whether it would be sufficient to warrant reversal standing alone is a question which does not require resolution because it should be considered with the other issues in the case. At this juncture it is sufficient to say that the unfair prejudice engendered by the improper questioning was serious in view of the nature of the offense charged. Although the majority purports to consider the error in its cumulative effect with other errors, it is difficult to ascertain whether in fact any substantial significance was attributed to any of the errors individually, let alone collectively.

Concerning the prosecuting attorney's misstatement of evidence during final argument to which an objection was interposed, I think the court erred in its response. Because the defendant's motion was quite specific, the judge's ruling might well have been considered by the jury as a disagreement with the position of defense counsel or in fact an approval of the allegation by the prosecution. Pursuant to appropriate defense motion made during the course of the trial, the evidence had been excluded by the trial court. However, when the same issue was referred to again in final argument, the trial court did not make the same ruling, and the jury may well have been left with the impression that there was such evidence. I do not think that the general instructions were sufficient to reduce or eliminate the erroneous impression which might have been created by the judge's ruling.

Generally, a brief comment on the last issue concerning the letter, its exclusion from evidence and the judge's explanation. I'm not sure whether the majority has found the procedure to be erroneous or not. What the majority does say is that to draw unfavorable prejudicial inferences from the circumstances surrounding the letter requires speculation and conjecture, thereby precluding the defendant from complaining. I think this is the very point at issue. Because of the circumstances surrounding this incident many speculations and conjectures are possible, some favorable to the defendant, some unfavorable. Yet because they are all speculations

and conjectures they have little to do with the truth-seeking process and may have permitted the jury to draw conclusions not based on reasonable inferences or evidence.

Whether or not the cumulative effect of the foregoing errors is harmless error depends on whether we can say that we believe beyond a reasonable doubt the effect of such errors may not have contributed to the verdict of the jury. In my opinion the cumulative effect of the errors is significant, and in a case such as this, depending primarily on credibility of witnesses, I think the effect was unfairly prejudicial. The majority characterizes the evidence as being overwhelming. I believe the evidence presented by the prosecution was sufficient to support a conviction and was substantial. I do not believe it can be viewed as overwhelming to the extent that it can be deemed unaffected as a matter of law by the errors which took place. The case in chief against the defendant was the testimony of the prosecutor's undercover police officer and the lab technician. The third party, who set up the transaction and who was apparently present at the transaction, did not testify. Additionally, rebuttal evidence was offered to refute the defendant's alibi, which evidence indicated that defendant was on the premises sometime after the time of the sale.

In summary, considering the errors as a whole, I believe they may have significantly affected the credibility of witnesses and deprived the defendant of a fair trial.