THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARNELL·TIPTON, Defendant-Appellant.

First District (5th Division)   Nos. 1—89—0058, 1—89—0092 cons.

Opinion filed November 27, 1991.

Michael J. Pelletier and Anne Meyer, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Randall Roberts, and Margaret Iwerebon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

After a jury trial, defendant Darnell Tipton was found guilty of two counts of aggravated criminal sexual assault. The trial court vacated one count of aggravated criminal sexual assault, finding that only one act of sexual penetration was alleged. Defendant was sentenced to a maximum extended term of 60 years' imprisonment.

This sentence was to run consecutively with a 90-year sentence imposed in an unrelated case.

On appeal, defendant argues that: (1) during closing argument the prosecutor made comments calculated to draw the jury's attention to the defendant's failure to testify; (2) the trial court erred in failing to instruct the jury that the State had the burden of proving beyond a reasonable doubt that the complaining witness did not consent to the sexual activity which occurred; (3) he was denied his sixth amendment right to effective assistance of counsel by defense counsel's failure to tender jury instructions on the issue of consent; (4) he was denied his sixth amendment right to an impartial jury when the trial court refused to excuse for cause a prospective juror who stated that a past experience might influence her decision in the present case; (5) the trial court erred in allowing the State to introduce prompt complaint testimony; and (6) the trial court erred in ordering that the 60-year sentence imposed in this case be served consecutively with a 90-year sentence imposed in an unrelated case.

At trial, complainant Robert O. testified that he was arrested on June 8, 1987, for jumping bail on a drug case, and placed in Cook County jail. While in jail on July 20, 1987, O. engaged in a verbal altercation with another inmate over the use of the telephone. Because of this altercation, O. was placed in segregation in the same cell with defendant, Darnell Tipton. After putting his personal belongings away, O. climbed onto the top bunk bed and began reading a book. The lights in the prison went out at 10:30 p.m. but O. turned on the light in his cell and continued reading. Sometime thereafter, defendant began talking to O. Defendant told O. that he was going to "f---" him in his "ass" and "leg slag" him. Defendant threatened to kill O. if he did not comply. O. told defendant he was not that kind of guy. Defendant continued to threaten O. and told him that he was a member of the Black Gangster Disciples and that if O. screamed, he would tell his friends in prison to begin yelling in order to stifle O.'s screams.

O. then climbed off his bunk bed and walked to the cell door to see if there was a guard nearby. Defendant then grabbed an object and placed the object at the right side of O.'s throat. Defendant told O. to pull down his pants. When O. refused, they argued back and forth. Defendant then placed O. on his bunk, pulled O.'s pants down and warned O. not to scream.

Defendant grabbed something off the window sill and lubricated his penis. Defendant then had anal intercourse with O. for 30 minutes. After ejaculating, defendant got up and told O. to clean him-

self off. O. then climbed back onto his bed and resumed reading. Defendant threatened to kill O. if he reported the incident.

In the morning, breakfast was delivered to defendant and O. Defendant took the breakfast, ate both his share and O.'s and again warned O. against reporting the incident. At 9 a.m. that morning, O. was removed from his cell to attend a hearing on the dispute that had occurred the previous night over the use of the telephone. O. testified that on the way to the hearing, he informed Sergeant Codilis about the sexual assault and told Codilis that he did not want to reside in the same cell as defendant. Sergeant Codilis took O. to the emergency room at Cermak Hospital, where he was examined.

Sergeant Codilis of the Cook County sheriff's department testified that on July 21, 1987, as O. was escorted to his hearing, O. requested to speak with Codilis, who was the supervisor on duty. O. complained to Codilis that he had been "raped" and added that he did not want to reside in the same cell as defendant. Codilis stated that he noticed abrasions on defendant's neck and testified that O. was distraught and cried. Codilis testified that after taking O. to the hospital, he returned to the jail and searched defendant and defendant's cell. The search revealed a used tube of Vaseline petroleum jelly but did not reveal a weapon.

Dr. Janice Robinson testified that she examined O. in the emergency room at Cermak Hospital. She testified that O. told her that he had been sexually assaulted. O. spoke in a low voice and held his head low as Dr. Robinson examined him. She described O. as appearing somewhat embarrassed and depressed. In addition to conducting rectal and oral swabs on O., Dr. Robinson took samples of O.'s pubic and head hair. The oral swab tested negative but the rectal swab tested positive for semen.

Dr. Robinson also testified that O. suffered from a recent neck abrasion and an abrasion to the left anterior chest. She testified that the neck abrasion was consistent with some type of object being placed at his neck, but could also have been caused by a blow from a fist, or a fall. She testified that based on her medical training, she believed O. had sustained the injury within 12 to 24 hours prior to her examination. Dr. Robinson also performed a rectal examination of O. and testified that she did not observe any injury or trauma to the rectal area.

Detectives Lenard Peterson and Clarence Lewis, both assigned to investigate defendant's case, testified on behalf of the State that when they first observed O. after the incident, he appeared emo-

tional and was in tears. The detectives both testified that they noticed a scratch on the right side of O.'s neck.

Thomas Epach testified on behalf of defendant that on July 21, 1987, while he was an assistant State's Attorney, he engaged in a conversation with O. Epach initially testified that he did not recall O. informing him that he had resisted defendant until defendant threatened him with a sharp object. On cross-examination, Epach stated that O. cried, was upset and visibly shaken. Epach also observed a bruise on O.'s neck.

The jury found defendant guilty of two counts of aggravated criminal sexual assault. Finding that only one crime had been committed, the trial court entered judgment on only one count of aggravated criminal sexual assault. The trial court found defendant eligible for an extended-term sentence based on two prior convictions and sentenced him to 60 years' imprisonment to be served consecutively with a 90-year sentence imposed in a prior unrelated case. Defendant appeals from both his conviction and sentence.

Initially, defendant maintains that the prosecutor violated his fifth amendment right to remain silent by commenting on his failure to testify at trial. Defendant raises issue with the following comments made by the prosecutor in closing argument:

"[PROSECUTOR]: Mr. [O.] supports their testimony. Mr. [O.] tells you what happened. Tells you that there was no consent. That it was by force and he tells you that there was some kind of object used, some type of object placed against his throat where the mark was. What that object was, an object was not recovered. We'll never know. Mr. Tipton knows. We'll never know what that object was.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: Where that object ended up we'll never know. Mr. Tipton knows. We'll never know, but the fact that there is an injury at this location is convincing evidence that some type of object was used."

A defendant has a constitutional right not to testify on his own behalf, and it is improper for the prosecutor to refer directly or indirectly to defendant's failure to testify. (*People v. Arman* (1989), 131 Ill. 2d 115, 125-26, 545 N.E.2d 658, 663.) In determining whether the prosecutor has improperly commented on defendant's failure to testify, the court must consider whether the comment was intended or calculated to direct the attention of the jury to defendant's fail-

ure to avail himself of his legal right to testify. *Arman*, 131 Ill. 2d at 126, 545 N.E.2d at 663.

The comments here are virtually identical to those in *People v. Lyons* (1976), 44 Ill. App. 3d 802, 803, 358 N.E.2d 1183, where the prosecutor stated:

> "Where is that gun? I sure wish we had it. Only one man knows where that gun is and he's sitting right there. Phillip Lyons."

The court found that these comments were improper in light of the fact that "the prosecutor directly referred to defendant by name and then unambiguously implied that defendant could have offered an explanation for the disappearance of the gun in question, but had chosen to remain silent." (*Lyons*, 44 Ill. App. 3d at 804, 358 N.E.2d at 1184.) The court in *Lyons* refused to find this error harmless since the proof of defendant's guilt was not overwhelming.

■ The prosecutor's comments in this case also called attention to the fact that defendant did not testify. In particular, the prosecutor referred to defendant by name and then emphasized the fact that defendant had not explained either what type of sharp object was used in the assault or the disappearance of the object. In addition, the prejudicial effect of the prosecutor's comment that defendant had not explained what type of sharp object was used was compounded when the trial court overruled defense counsel's objection. (*People v. Ray* (1984), 126 Ill. App. 3d 656, 661, 467 N.E.2d 1078, 1082.) By overruling defense counsel's objection to this comment, the court gave the jury the impression that the prosecutor's remark was proper. Instructing the jury that it should not consider the defendant's failure to testify is not always sufficient to cure this type of error where the objection is sustained. (*People v. Johnson* (1976), 35 Ill. App. 3d 666, 341 N.E.2d 443.) It is therefore clear that such an instruction will not cure the error where the objection has been overruled. The prejudicial effect of the prosecutor's comment was then further exacerbated when, after the objection was overruled, he commented that defendant had not provided an explanation for the disappearance of the weapon. In fact, the prosecutor's comments are particularly dismaying in light of the fact that there was ample evidence in this case from which the defendant could have been found guilty. Although the facts of this case present a close question on whether the prosecutor's comments described above constituted harmless error, due to the great number of cases coming before us involving valid claims of prosecutorial misconduct, we determine that a new trial in this case is required.

■ Defendant next contends that the trial court erred in failing to instruct the jury on the issue of consent. The jury was instructed:

> "To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:
>
> *First*: That the defendant committed an act of sexual penetration upon Robert [O.], and
>
> *Second*: That the act was committed by the use of force or threat of force; and
>
> *Third*: That the defendant threatened to use a dangerous weapon or any other object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon [;]
>
> or
>
> *Third*: That the defendant caused great bodily harm to Robert [O.]. If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

The jury was not instructed on the defense of consent or the definition of consent nor was any instruction on consent tendered by defendant.

Because we are reversing and remanding this case due to the prosecutor's improper comments on defendant's failure to testify, we need not determine whether it was reversible error to fail to instruct the jury on the issue of consent. (See *People v. Coleman* (1987), 166 Ill. App. 3d 242, 520 N.E.2d 55 (the failure to instruct the jury on the State's burden to prove lack of consent beyond a reasonable doubt was grave error); *People v. Roberts* (1989), 182 Ill. App. 3d 313, 537 N.E.2d 1080 (the failure to instruct the jury that the State had the burden to prove lack of consent was not grave error since by proving the "force or threat of force" element the State implicitly proved nonconsent).) Because it can be contended that absence of a weapon does raise an issue of consent, on remand the jury should be instructed that consent is a defense and that the burden of disproving consent rests with the State. Given this determination, we also need not address defendant's assertion that he

did not receive effective assistance of counsel at trial because defense counsel failed to tender an instruction on the issue of consent.

Defendant next asserts that the trial court erred when it declined to excuse a juror who expressed uncertainty about her ability to be impartial. In the course of *voir dire* the court asked a prospective juror whether any member of her immediate family had been the victim of a crime. After she replied that her sister had been raped five years ago, the following exchange then ensued:

"THE COURT: Would that, do you think that would influence you in any way considering the nature of the charges, ma'am?

JUROR: I don't know. I honestly don't know. I would try to.

THE COURT: You would try to honor your oath as a juror?

JUROR: Do my best.

* * *

THE COURT: You would honor your oath as a juror to the best of your ability?

JUROR: Yes, sir."

At the close of *voir dire*, defense counsel moved to excuse the juror for cause because she initially responded that she did not know whether the rape of her sister would affect her impartiality. The trial court denied the request, stating that the juror indicated that she would honor her oath as a juror.

The trial judge is afforded broad discretion in *voir dire*, and a trial court's determination as to whether a prospective juror can give the accused a fair trial will only be set aside if contrary to the manifest weight of the evidence. (*People v. Pecina* (1985), 132 Ill. App. 3d 948, 477 N.E.2d 811.) The court in *People v. Johnson* (1987), 162 Ill. App. 3d 952, 516 N.E.2d 343, found that the trial court had not abused its discretion when it declined to excuse a juror who initially expressed uncertainty about his ability to be impartial. In *Johnson*, the court conducted the following examination of the prospective juror:

"Q. The fact that you are for gun control, would that so color your thinking you would not be a fair and impartial juror, is that the bottom line?

A. I don't know. That is hard to say because I am for gun control absolutely.

Q. Would you follow the instructions that I would give you at the conclusion of this case concerning the law that is applicable to this type of case?

Do you think you would be able to do that?

A. I would try.

Q. That is all we could ask. Okay ***.

* * *

Q. Would your feelings so cloud your ability to be a judge in this case so that you don't think that you would be able to be fair and impartial? That is set aside your natural abhorrence of weapons and judge this on the facts in this case and not based on what you feel or don't feel?

A. I would try.

THE COURT: That is all we could ask." (162 Ill. App. 3d at 953-54.)

The court stated that although the response of the juror was somewhat equivocal upon the court's general inquiry, the response did not demonstrate that she could not be impartial, particularly because the juror stated that she would try as best as she could to be impartial. Since the trial court was in the best position to evaluate this response and fairly decide its candor, the court concluded that the denial of defendant's challenge was not improper. *Johnson*, 162 Ill. App. 3d 952, 954-55, 516 N.E.2d 343, 345.

■ Likewise, while the prospective juror in the instant case did initially express that she "might" have some difficulty being impartial, she clearly indicated that she would do her best to abide by her oath as a juror. Her response does not cast the same degree of doubt on her ability to be impartial as do the responses of the jurors in the cases cited by defendant. (See *People v. Harris* (1990), 196 Ill. App. 3d 663, 554 N.E.2d 367 (when asked if he could put aside past events and listen with an open mind, juror stated "no"); *People v. Washington* (1982), 104 Ill. App. 3d 386, 432 N.E.2d 1020 (juror said he did not know if he could be a fair juror, and stated that he "generally" believed prosecution should have burden of proof); *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263 (jurors believed that defendant should have to prove he was innocent).) Accordingly, the trial court did not abuse its discretion in assessing that the juror was credible and capable of rendering a fair and impartial verdict.

Defendant next alleges that the trial court improperly permitted evidence that the victim made a prompt complaint of sexual assault. While as a general rule the testimony of a witness cannot be bol-

stered by showing that she made similar statements out of court, a well-established exception to the hearsay rule allows the complainant in sexual assault cases to show that she made a prompt complaint of the incident. (*People v. Evans* (1988), 173 Ill. App. 3d 186, 199, 527 N.E.2d 448.) The rationale underlying the exception is that it is entirely natural that the victim of a forcible sexual assault would speak out regarding it and, conversely, that the failure to do so would, in effect, be evidence that nothing violent had occurred. *People v. Damen* (1963), 28 Ill. 2d 464, 473, 193 N.E.2d 25.

Defendant argues that although the legislature recodified the various sex offense provisions, including rape, into a comprehensive set of sex crimes (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13 through 12—16), only those rape or criminal sexual assault cases that would have constituted rape under the former statute are subject to the rule allowing prompt complaint testimony. (See *People v. Gillman* (1980), 91 Ill. App. 3d 53, 414 N.E.2d 240 (testimony of prompt complaint not admissible in trial for contributing to sexual delinquency of a minor); *People v. Romano* (1923), 306 Ill. 502, 138 N.E.2d 169 (prompt complaint testimony not admissible in trial for indecent liberties with a child since the rule permitting evidence of complaint does not extend to any offenses other than rape).) Because rape was defined under the previous statute (Ill. Rev. Stat. 1983, ch. 38, par. 11—1) as well as the statute in effect at the time of the *Romano* decision (Ill. Rev. Stat. 1923, ch. 38, par. 490), as a male having sexual intercourse with a female by force and against her will, defendant contends that the rule permitting testimony of prompt complaints in rape cases was inapplicable in this case, where a male is accused of sexually assaulting another male.

■ Defendant's argument is unpersuasive. Although the conduct of defendant would not have fallen under the definition of rape under the previous statutes, common sense dictates that the same rule apply regardless of whether the victim is male or female. The rationale of the prompt complaint hearsay exception is to foreclose the inference that the intercourse was consensual. Indeed, the consent of the male victim is as relevant to the resolution of this case as it would be to the resolution of a case involving a female victim. Accordingly, the testimony of both O. and Codilis concerning O.'s prompt complaint was properly admitted.

Lastly, defendant contends that the trial court improperly imposed a consecutive sentence on defendant because that sentence exceeded the aggregate of the two most serious crimes for which he had been convicted. On August 7, 1987, in a case unrelated to

the present one, the trial court sentenced defendant to an extended term of 60 years and an unextended term of 30 years for aggravated criminal sexual assault and armed robbery, both Class X felonies. The court ordered that these sentences be served consecutively. On December 20, 1988, the trial court sentenced defendant in the present case to a maximum extended term of 60 years for aggravated criminal sexual assault and ordered that this sentence be served consecutively to the 90-year sentence imposed in the prior case. Defendant alleges that his sentence of 150 years' imprisonment, to be served consecutively, violates the maximum aggregate of consecutive sentences authorized by the following section of the Unified Code of Corrections:

"For sentences imposed under law in effect on or after February 1, 1978, the aggregate of consecutive sentences shall not exceed the sum of the maximum terms authorized under Section 5—8—2 for the 2 most serious felonies involved." Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(c)(2).

Although the statute clearly states that the sentence shall not exceed the aggregate maximum terms for the two most serious felonies involved, the court in *People v. Spires* (1989), 182 Ill. App. 3d 176, 537 N.E.2d 1010, held that section 5—8—4(c)(2) does not apply where the defendant's consecutive sentences are imposed for separate offenses committed at different points in time. The defendant in *Spires* was convicted of four different rape charges involving four different victims at four distinct times. He was sentenced to 60 years' imprisonment on each rape and was ordered to serve the sentence consecutively for an aggregate of 240 years. In affirming defendant's sentence, the court stated that the practical effect of accepting defendant's position that section 5—8—4(a)(2) applied even where a defendant has been convicted of committing different crimes at different times

"would be to (1) give a defendant free reign to commit as many crimes as he desires with the knowledge that he is only subject to consecutive sentencing on two of those crimes and (2) lessen the protection of the public from persons who have been determined to be a serious threat to society because of their criminal conduct, thereby circumventing the purpose of consecutive sentencing. Such a conclusion is not supported by logic or statutory authority." *Spires*, 182 Ill. App. 3d at 185, 537 N.E.2d at 1015.

■■ Here, while defendant was convicted of three distinct charges, these charges involved only two different victims and two

distinct points in time. Notwithstanding this fact, it was still proper to add a 60-year consecutive sentence to defendant's previous consecutive sentence of 90 years. To hold otherwise would allow a defendant who has already received a consecutive sentence to continue to commit further crimes without the fear of receiving a longer sentence.

Reversed and remanded.

LORENZ, P.J., and MURRAY, J., concur.