THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALTER GARMON, Defendant-Appellant.

(No. 58760;

First District (3rd Division)—April 18, 1974.

*Rehearing denied May 2, 1974.*

Paul Bradley, Deputy Defender, of Chicago (Edwin R. McCullough, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Linda West Conley, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant Walter Garmon was charged with the offense of aggravated assault with a deadly weapon (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(a)(1)). After waiving indictment he was tried by the court, found guilty and sentenced to 1 year of probation with the first 30 days to be served in the House of Correction.

Garmon presents three issues for review on appeal: the complaint upon which he was tried was fatally deficient, he was not proved guilty beyond a reasonable doubt and his sentence was improper under the 1973 Unified Code of Corrections.

The complaint stated:

"Joseph Brzana complainant * * * states that Walter Garmon has, on or about 19 Feb. 1972 at 14 S. Hoyne Ave., Chicago, Illinois committed the offense of Aggravated Assault in that he knowingly and unlawfully without legal justification and while using a deadly weapon a 38 Caliber S&W revolver 2″ barrel, B/S6 Shot Serial #-J50016, thereby placing the Victim in fear of receiving a battery, pointed weapon at Victim and threatened him with bodily harm * * *.

/s/ Joe Brzana"

Joseph Brzana, a Chicago policeman, testified that on February 19, 1972, as he and his partner passed Hoyne Street while traveling east on Madison in an unmarked squad car, he believed he heard a shot. They made a U-turn and drove to the corner of Madison and Hoyne, where they were flagged down by Mary Louis, who told them there was a man in her apartment with a gun. He noticed no one else on the street. She directed them to an apartment in a building at 14 South Hoyne. The hallway they entered was unlighted; the only available light came from

the interior of the apartment. When the two policemen knocked, Garmon opened the door and pointed a .38-caliber revolver at them from a distance of 2 or 3 feet. Brzana announced that they were Chicago policemen, but Garmon continued to point the gun in their direction, cursing them and stating that he would not surrender the gun to anyone. Fearing for his safety, Brzana ducked around a corner, as did his fellow patrolman. Eventually they managed to subdue and disarm Garmon. The gun taken from him smelled like it had been recently fired, although the barrel was not warm.

Mary Louis, the common-law wife of Walter Garmon for 16 years, testified that on February 19 about 12:25 P.M., she was returning to her home when she noticed a group of boys in front of her building. The boys ran when they saw her; however, she feared something had happened, so she stopped the police officers, told them there was a disturbance at her dwelling and that she wished to get into her apartment. She denied hearing any gunshot and also denied telling the officers that there was a man in her apartment with a gun. She stated that as they reached the apartment, which was locked, Brzana's partner said, "Open up." When there was no response, he kicked the door open without saying another word. Garmon was standing in the center of the room holding a gun, but, she said, it was pointed to the floor. She added that after the policemen entered, Garmon realized they were law officers and surrendered the gun without a struggle. She remembered that she did not have her key with her at the time, but said she told the officer who broke into the apartment, "You don't have to kick the lock off the door."

Garmon testified that a gang frequently met in front of the building at 14 South Hoyne where they would fire guns and throw bricks and rocks at the window and door of his basement apartment. This, he said, was going on during the early afternoon of February 19, 1972. Subsequently, he heard the words "Open up." He said before he had time to open the door, it was kicked in, "and there were two cops." They took his gun and handcuffed him, although he did not struggle and had not pointed the gun at either officer.

██ The defendant first charges error because the complaint failed to identify the victim of the assault. He contends that the only reference to that person is the word "Victim," which is not sufficiently specific to meet due process requirements of notice nor to establish a double jeopardy defense if at some future date he should face a second prosecution for the same offense. We do not perceive such dangers flowing from the form of this complaint. While a complaint must be sufficiently specific to inform the offender of the accusation against him so that he will be able to prepare his defense and avoid being placed in double

jeopardy (*People v. De Groot* (1968), 108 Ill.App.2d 1, 247 N.E.2d 177), its specificity must be evaluated by a reading of the whole document, and there must be a showing of prejudice to the defendant from the claimed defect. (See *People v. Williams* (1967), 37 Ill.2d 521, 229 N.E. 2d 495.) The first line of the complaint identified the complainant and his signature appeared twice below the text of the document. When read as a whole, the document leaves no doubt that the complainant, Joseph Brzana, was also the alleged victim. If the defendant was genuinely confused, it was open to him to employ any of the whole panoply of discovery devices now available to criminal defendants. (*People v. Jones* (1973), 53 Ill.2d 460, 292 N.E.2d 361.) But the record shows that no such confusion existed. Garmon was neither misled nor prejudiced in the preparation of his defense. There is no possibility that he could be subsequently convicted for the same offense, since a report of the proceedings would be available to him for production in court if a double jeopardy defense became necessary. (*People v. Jones.*) Thus, we reject the claim that the complaint did not identify the victim of the offense with sufficient particularity.

■■ We also reject the defendant's contention that the evidence did not prove him guilty beyond a reasonable doubt. In criminal cases where a jury is waived, the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from it are reserved to the trial judge who saw and heard the witnesses testify. Because his firsthand observation provides him with a superior opportunity to assess the testimony, his judgment will not be disturbed upon review unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. (*People v. Sims* (1972), 5 Ill.App.3d 727, 283 N.E.2d 906.) The testimony of a single witness is sufficient to support a conviction if it is positive and credible. (*People v. Smith* (1970), 121 Ill.App.2d 105, 257 N.E.2d 261.) When sitting as trier of fact and presented with conflicting testimony, a judge may believe the complainant and disbelieve the defense witnesses. *People v. Henry* (1971), 3 Ill.App.3d 235, 278 N.E.2d 547.

■■ The trial judge chose to believe Officer Brzana, and the choice is supported by the record. Contradictions appear in the testimony of the defendant and his witness. The tenor of their stories is that the police were called for help, but overresponded and exceeded their authority by making an unlawful entry into Garmon's apartment, thus justifying his threatened use of force. (See Ill. Rev. Stat. 1971, ch. 38, par. 7—2(a).) The testimony, however, breaks down when examined in its several parts. The gang story appears contrived. The officers, after hearing a shot and being hailed by Miss Louis, did not notice any group dispers-

ing and saw no one in front of the woman's building. Her supposed fear of a gang outside the premises does not explain why she led the policemen into the premises and to her very door, nor why she had been locked out of her own apartment with no key. Finally, her reconciliation with the defendant and her interest in him as his common-law wife of 16 years, cannot be ignored. Garmon attempted to bolster his contention that he justifiably used threats of force to protect his dwelling, by claiming that he believed two strangers were breaking into his apartment, and that the officers did not identify themselves. But he then, inconsistently, testified that when the door was opened, "there were two cops." Since Officer Brzana and his partner were out of uniform at the time, Garmon could not have known they were policemen unless they had by some means identified themselves to him. Therefore, his claim that their entry was unlawful, particularly when viewed in light of the fact that they had been called by Miss Louis, who shared his home, is, at best, tenuous. It seems equally implausible that a person who believed his home was being violently invaded by strangers and who had taken the trouble to arm himself, would then hold the gun slackly, pointed to the floor, as the strangers broke down his door. The defendant was proved guilty beyond a reasonable doubt of the offense of aggravated assault, and his conviction will be affirmed.

■■   Garmon was sentenced to one year of probation, upon condition that he serve the first 30 days in the House of Correction. Since this case has not yet reached the stage of final adjudication, the Unified Code of Corrections is applicable to its disposition. (*People v. Chupich* (1973), 53 Ill.2d 572, 295 N.E.2d 1; *People v. Harvey* (1973), 53 Ill.2d 585, 294 N.E.2d 269.) Under the pertinent provision of the code, imprisonment could not be made a condition of a sentence of probation. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—6—3(d).) Therefore, the order of probation is modified by vacating the condition that the defendant serve the first 30 days of his term in the House of Correction. As modified, the judgment is affirmed.

Judgment affirmed as modified.

McGLOON and MEJDA, JJ., concur.