THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FOREST P. WHITLOW *et al.*, Defendants-Appellants.

Third District   No. 78-33

Opinion filed July 8, 1980.

STOUDER, J., concurring in part and dissenting in part.

BARRY, J., dissenting.

Anton R. Valukas and Jeffrey D. Colman, both of Jenner & Block, of Chicago, for appellant Truman K. Gibson, Jr.

David L. Thompson, of Moline, and Peter M. Soble, of Rock Island, for appellant James Marando.

Matthias A. Lydon, of Chicago, for appellant Forest P. Whitlow.

F. Jack Nathan, of Spector & Tappa, of Rock Island, for appellants Joseph P. Delfino and John L. Brewer.

William J. Scott, Attorney General, of Chicago (Donald B. Mackay, Melbourne A. Noel, Jr., and Bernard Hoffman, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

After a lengthy trial in Rock Island County the defendants Whitlow, Brewer, Delfino, Gibson and Marando were all found to be guilty of the offenses charged in a 12-count indictment. Briefly summarized, the 12 counts charged that all the defendants sold stock in a corporation known as Royal National Investment and Mortgage Corporation and that in selling the stock they made false statements and omitted to inform prospective purchasers of material matters relating to the stock and the company. Counts I through V charged the defendants with conspiracy and substantive violations of the Illinois Securities Law of 1953 and specifically sections 12(F), (G), (I) and 14 (Ill. Rev. Stat. 1973, ch. 121½, pars. 137.12(F), (G), (I) and 137.14). Count I charged the defendants with conspiracy to violate the Illinois Securities Law of 1953. Count VI charged the defendants with conspiracy to commit the offense of theft in violation of section 8—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—2(a)). Counts VII through XII charged the defendants with theft by deception in violation of section 16—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1b).

All of the defendants with the exception of Marando were officers and directors of Royal National. Marando was a salesman of the corporation who was paid a commission on the stock sales he made.

After approximately three weeks of trial the trial of the defendant Marando was severed from that of the other defendants when it became apparent that his defense was antagonistic to that of the other defendants. He later pleaded guilty to counts II through V (securities law violation) of the indictment and was sentenced to concurrent terms of not less than one nor more than three years of imprisonment.

Subsequent to the jury return of guilty verdicts against the defendants Whitlow, Brewer, Delfino and Gibson on all 12 counts of the indictment, the trial judge vacated and dismissed judgments on counts I, VI and XII. The order dismissing counts I and VI (the conspiracy counts)

was entered pursuant to section 8—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—5), which mandates that judgment shall not be entered on substantive counts as well as a conspiracy count. Count XII was dismissed on the grounds that it did not properly allege an offense.

The trial court permitted the judgments of guilty on the remaining nine counts to stand. The defendant Gibson was sentenced to concurrent terms of imprisonment of not less than one nor more than three years on each count and was further fined in the amount of $20,000. The defendants Whitlow, Brewer and Delfino were sentenced to concurrent terms of imprisonment of not less than one nor more than three years on each count.

A brief summary of the facts which resulted in the defendants' convictions is as follows: The evidence adduced at the trial of the defendants disclosed that after the incorporation of Royal National they personally and/or with the assistance of their salesman, the defendant Marando, proceeded to sell stock. The stock was sold for $1 per share and in most instances a minimum purchase of 10,000 shares was required. In opening statement the State informed the jurors that when selling the stock it was represented to a number of prospective purchasers that the corporation would engage in the aquisition of "sludge" which would be transported to the Bahamas or other Caribbean islands for use as fertilizer on nonproductive soil. The term "sludge" is used in referring to processed wastes, primarily human wastes, the disposal of which is presenting a problem to large municipalities. Other possible ventures mentioned were the building of condominiums in the Bahamas, a program to train Bahamanian people for various types of employment and the ownership of a scholarship research program. The record further establishes that the defendant Gibson was interested in and did do a considerable amount of investigation, research and other activities in regard to the "sludge" program. A great portion of his time for a 1½-year period was devoted to promoting a sludge project. He worked with officials from the Metropolitan Sanitary District of Chicago which is engaged in a sludge project. He also had numerous contacts with officials from the Bahamian Government and the United States. The sludge project never materialized, and the jury was confronted with a factual question as to how much if any of defendant Gibson's activities relating to sludge were performed on behalf of Royal National. Ultimately, approximately $220,000 was realized from the sale of Royal National's stock, a great portion of which was disbursed to the defendants Whitlow, Brewer, Delfino and Gibson as payment of salaries and for the reimbursement for alleged expenses. The defendant Marando received a comparatively smaller amount for commissions earned. None of the investors ever realized any financial gain, but on the contrary all suffered losses.

The defendant Gibson prior to and at the time of the incorporation of Royal National was a lawyer. From August 1971 to July 1974, he maintained an office on North Michigan Avenue in the city of Chicago. From May 1973 to January 1974, defendant's office space was also used by Royal National, which entered into a rental agreement with a company known as Tuesday's Publications, the owner of the office building or the entity in charge of renting the same. While Royal National used the office facilities they were also used by defendant Gibson in handling business other than that of Royal National.

This appeal presents a multiplicity of issues, so a further recitation of additional facts will be set forth if and when they become pertinent.

Attention is first directed to the defendants Whitlow, Brewer, Delfino and Gibson's contention that they should receive a new trial because of prejudicial misconduct throughout the trial on the part of the prosecutor.

A number of incidents occurred during the trial which are claimed by the defendants to have resulted in misconduct on the part of the prosecutor of such a serious nature as to require a reversal of their convictions and a remandment for the purpose of a new trial. Those incidents complained of occurred in the prosecutor's opening statement, *voir dire* examination and closing argument. This court will consider them sequentially.

The defendants contend that in the opening statement the prosecutor claimed that the evidence to be adduced would prove that the investors were told of certain matters which would influence a reasonable investor in arriving at his decision as to whether or not he should purchase stock. Specifically, the defendants cite the following comment made by the prosecutor:

> "They [the investors] were never told that the one legitimate bill ever incurred by Royal National, a bill to send something [*sic*] to the Bahamas to see if some of these projects might be feasible, a bill for $2500.00, a bill amounting to not even one percent of the total income of Royal National never was paid and goes unpaid to this date."

Evidence disclosed that a bill was owed by Royal National to Dr. W. J. Bauer, a consulting engineer. Dr. Bauer's business was contacted and retained by James Braxton, an official of the Metropolitan Sanitary District, to conduct a study in certain areas of the Bahamas as to the feasibility of a sludge operation in the areas designated. Braxton and defendant Gibson had frequently met and worked together in regard to a sludge project. It is evident that Braxton, who employed Bauer's business, was acting for Gibson. Bauer was to testify that he assigned Dr. Tom Hinsley of the University of Illinois to journey to the Bahamas and make the requested study. Hinsley did so in the summer of 1974. It was

Bauer's further testimony that the bill was for $1,200 rather than $2,500, but in any event it remained unpaid as of the dates of the trial.

The defendants correctly argue that it would have been impossible to advise the prospective purchasers of the unpaid bill since it was not incurred until long after the sales of stock.

■■ This court has stated:

"Assumptions and statements of fact which are not based upon evidence admitted at trial, may not properly be argued to the jury. (*People v. Beier*, 29 Ill. 2d 511, 194 N.E.2d 280.) Upon similar reasoning the prosecutor cannot comment during his opening statement upon what testimony will be introduced at trial and then fail to produce such testimony. Such arguments and comments effectively assert the prosecutor's own unsworn testimony in lieu of competent evidence." *People v. Rogers* (1976), 42 Ill. App. 3d 499, 502, 356 N.E.2d 413, 416.

It is the State's contention that the complained-of comment was merely made in an incorrect context. It is difficult if not impossible to perceive a context where such a comment would be justified and permissible because it is not susceptible of proof. The State's other response to the defendants' claim of error is that prejudice was eliminated as the result of the trial court advising the jury that opening statements as well as closing arguments were not evidence in this case. The record supports the State's assertion that the jury was so cautioned.

The prosecutor in his opening statement to the jury informed them that the defendants had lied to prospective investors by telling them that Royal National would use some of the money received from stock sales to invest in a venture, the purpose of which was to build condominiums in the Bahamas. Twenty-three witnesses testified for the State. Seventeen of the witnesses were individuals who had purchased stock from the corporation. The record is devoid of any testimony from these witnesses that their money would be used to construct condominiums. Witness Westercamp testified that some representations had been made to him that Royal National might engage in locating or finding money for mortgage purposes and referred to housing in the Bahamas as a project that might have a need for mortgage money. There was no testimony regarding the ownership, management or construction of condominiums by Royal National. Again the prosecutor produced a situation where an allegation was made in his opening statement which was not later supported by the evidence. If the jury relied upon the prosecutor's promise of proof as to allegations concerning a condominium venture by Royal National, the defendants were as a result prejudiced. *People v. White* (1978), 56 Ill. App. 3d 757, 372 N.E.2d 691.

During the *voir dire*, and after four jurors had been accepted and

sworn, counsel for the defendant Marando informed the court that one of the four jurors had misrepresented certain facts during *voir dire.* In order to prevent or minimize any prejudice which could possibly result from a further interrogation of this juror, the court concluded to question the juror, Mrs. Hicks, in chambers with all counsel present. The prosecutor interrupted the in-chambers interrogation by the court of Mrs. Hicks by making the following statement, "I think that it should be clear that it is not the people, Your Honor, asking these questions." Mrs. Hicks was later selected to serve as foreman of the jury.

■■ The statement of the prosecutor was not in context with any other statements made by anyone or answers submitted by Mrs. Hicks. At the time the prosecutor interjected his statement no questions had been submitted by any party except the court. The only interpretation that can be gleaned from the statement is that the prosecutor wished to convey to Mrs. Hicks that if she was in any way discommoded, or if she felt her integrity was being questioned, it was not because of any action on the part of the State. The statement of the prosecutor smacks of a calculated effort on the part of the prosecution to prejudice the defendants. Such comment was totally unwarranted, for it is incumbent on both the prosecutor and the defense to strive to obtain a jury free from any taint of bias or prejudice. The comment to a degree served to defeat the very purpose of the trial court's decision to hold an in-chambers interrogation, that purpose being to foreclose any possible prejudice that might result from an examination of Mrs. Hicks in open court.

In the presentation of its case the State called Mrs. Bernice Streeter. Mrs. Streeter testified as to being contacted by the defendant Marando, who desired to sell stock in Royal National. She further testified as to representations concerning the corporation's interest in a sludge operation and scholarship program. She further testified that her husband was present and that they purchased stock and received a receipt which she identified. At the conclusion of Mrs. Streeter's testimony her husband, Percy Streeter, was called as a witness. The sole testimony elicited by the prosecutor from Mr. Streeter was as follows:

"Mr. Streeter: Yeah, I told him [defendant Marando] I didn't have the money to invest and I was strapped and then I started the story a few years before that I lost my daughter and I had an insurance policy on her since she was a little girl and she left two little girls and I had that $10,000 life insurance policy so I asked him if it was a good place to invest it for these two little girls and he said it was and so that is where the $10,000 went."

Counsel for the defendant Gibson moved for a mistrial or that the testimony be stricken and counsel for other defendants joined in these motions. The trial court denied both motions. In examining the record it

is clear that Mr. Streeter did not testify as to any of the misrepresentations charged in the indictment and in fact to have done so would have been repetitious since his wife Bernice had testified in depth as to such matters. It should be further noted that defense counsel, even though requested, had received no prior statement as to what Mr. Streeter's testimony would be and that further the witness had refused to talk to defense counsel.

It is the contention of the defendants Whitlow, Brewer, Delfino and Gibson that the witness was called to the stand for the sole purpose of relating a story which was calculated to instill sympathy in the minds of the jurors to the prejudice of the defendants. Defense counsel categorized the calling of the witness and his testimony as a "planned operation" which, because of lack of knowledge, precluded the defendants as well as the trial court from doing anything to prevent the introduction of what was referred to as "devastating and prejudicial" testimony. The prosecutor acknowledged that he knew what the testimony of Mr. Streeter would be and that was the precise reason he put him on the stand. The prosecutor further agreed that the testimony was prejudicial and devastating to the defendants but explained that devastating testimony was what the defendants' behavior merited. The trial court admonished the prosecutor to try to refrain from what verges on somewhat inflammatory testimony and then denied the defendants' motion for mistrial.

There is no difficulty in determining that the evidence produced by the testimony of Mr. Streeter was the result of contrivance on the part of the State, since the prosecutor admitted that the testimony was prejudicial, inflammatory and that he knew what the witness would say. In weighing the tendency of offered evidence to prove an issue in dispute against its tendency to produce passion and prejudice out of proportion to its probative value, the matter is largely within the sound discretion of the trial court. Evidence, however, which will only serve to prejudice the minds of the jury is properly excluded. See 29 Am. Jur. 2d *Evidence* §260, at 310 (1967).

With these guidelines in mind it must be determined if the probative value of the testimony outweighed its prejudicial effect. The State argues that the testimony was relevant to illustrate the unethical conduct of the defendant Marando (whose case at the time had not yet been severed from that of the other defendants) and that it further was relevant to the state of mind of the defendants. The State in presenting this argument overlooks the fact that dispassionate proof of misrepresentation both by commission and omission as well as participation in an artifice or scheme to defraud, would equally as well if not better illustrate unethical conduct or the state of mind of the defendants. A planned contrivance to

prejudice, inflame or create sympathy in the minds of jurors should not be glossed over by a court of review. Mr. Justice Schaefer of our supreme court was confronted with a similar situation in the case of *People v. Newbury* (1972), 53 Ill. 2d 228, 290 N.E.2d 592. The justice in *Newbury*, while affirming the conviction of a defendant for murder, nevertheless made the observation that questions deliberately designed to prejudice the defendant and the same being irrelevant could warrant a reversal.

The complained-of incident concerning Mr. Streeter's testimony occurred early in the trial of the defendants. The trial court in denying defendants' motions admonished the prosecutor as to "somewhat inflammatory testimony" but indicated that the jury would be hearing a lot of testimony. It is apparent that the trial court did not consider this incident occurring early in a trial which was to continue for approximately three weeks necessitated the granting of a mistrial. The trial court should not be faulted for this ruling. The incident upon review, however, should be considered in conjunction with other alleged instances of prosecutorial misconduct.

The defendants further complain of certain statements made by the prosecutor in his closing argument. The first complained-of statement centers around the renting by Royal National of office space in the city of Chicago. The space rented was that which had been rented by the defendant Gibson in 1971 for his law office. Royal National commenced using the space in May 1973 in conjunction with Gibson, who was secretary of the corporation. Commencing in May 1973, Royal National paid all the rent which was in the sum of $625 per month. In his closing argument the prosecutor stated:

"What about these offices? Necessary? Unnecessary? Extravagant? Unextravagant? I won't for a minute stand here and tell you that a company doesn't need offices but I will tell you that when rent jumps $400 a month for the same space at 625 North Michigan Avenue in Chicago, something is wrong and you can look at the ledger sheets yourself and find out how much Truman Gibson was getting during the time he was associated with this company to pay his rent, where was that extra $400 a month going? *I submit to you it was going into Mr. Gibson's pocket.*" (Emphasis added.)

The State does not contend that this statement of the prosecutor was supported by the evidence, but instead argues that great latitude is granted to a prosecutor in the presentation of his final argument. It should be observed, however, that such latitude does not encompass a totally unsupported charge that a defendant committed a theft. The charge that the defendant Gibson was "pocketing money" was not made in the form of an innuendo but was a flat, forthright assertion.

An affidavit of the president and chairman of the board of the

company in charge of the rental of the premises wholly refutes the prosecutor's statement that the defendant Gibson received any portion of the rental payments made by Royal National and that the rental charge for the office space did not materially increase when used by Royal National. The error committed by the prosecutor in this instance is compounded in that the record clearly supports the fact that the State had pretrial knowledge as to the absence of any wrongdoing on the part of Gibson as to the rental arrangement. An accusation unsupported by evidence that a defendant unlawfully pocketed money classifies him as a thief and consequently is inflammatory and prejudicial. The prosecutor violated the rule that has been consistently adhered to by this court that assumptions and statements of fact not based upon the evidence in a case may not be argued to the jury. *People v. Johnson* (1976), 35 Ill. App. 3d 666, 341 N.E.2d 443; *People v. Young* (1975), 33 Ill. App. 3d 443, 337 N.E.2d 40.

This court in adhering to the principle that every defendant is entitled to a fair trial has not been loath to reverse criminal convictions because of improper comments by a prosecutor which served to deny a fair trial. See *People v. Thomas* (1976), 37 Ill. App. 3d 320, 346 N.E.2d 190; *People v. Monroe* (1975), 32 Ill. App. 3d 482, 335 N.E.2d 783, *aff'd* (1977), 66 Ill. 2d 317, 362 N.E.2d 295.

In examining the closing argument of the prosecutor it is apparent that other allegations and accusations as to misconduct on the part of the defendant Gibson were freely and loosely made. In referring to Gibson's activities the jury was asked:

"How many people has he [Gibson] got paying him to make a project eventually pay off for him? How many other corporations was he using? How many other shareholders? How much money was he taking * * *."

The prosecutor in referring to Gibson stated: "Maybe this time he will get caught." The prosecutor as to defendants Brewer, Whitlow and Delfino argued that "[they] know that if you pay $500 to R. Everett & Company you can get a lot of people who have been taken before * * *." It was further stated in final argument that "Truman Gibson received $8,000 a month for five months." In referring to Gibson's efforts in regard to the sludge project the prosecutor voiced his opinion by stating:

"What this says I believe is that these projects were truly projects of Truman Gibson and had they gone anywhere at all, the shareholders of Royal National might as well have jumped in the Mississippi River because Truman Gibson was going to be on the gravy train and they were going to have to sit around and split up shares of a company that had been dissolved in 1974."

■■ It is not necessary to engage in an analyzation of the evidence as to the remarks which we have set forth and attributed to the prosecutor. It is sufficient to note that they were not supported by the evidence. The State does not quarrel strongly with this finding but attempts to justify them as being legitimate inferences which could be arrived at in considering the evidence. This court quarrels not with the rule that a jury can draw logical inferences from the evidence but in the instant case the prosecutor's remarks exceeded the bounds of inferences and instead were blatant accusations that served to inflame and prejudice the jury.

A zealous prosecution is to be commended; however, an overzealous prosecution too frequently results in the striking of foul blows. (*Berger v. United States* (1935), 295 U.S. 78, 79 L. Ed. 1314, 55 S. Ct. 629.) Reviewing courts have been accused of seeking a perfect trial in lieu of seeking the truth. This court recognizes that it is doubtful if any trial of any consequence can ever be classified as a perfect one; however, this court is dedicated in its endeavors to provide an accused a fair trial.

■■ In examining the prosecutorial misconduct which occurred in the opening statement, *voir dire* examination and final argument it could well be concluded that one or two of the impermissible acts might require a reversal and remand for a new trial. Any doubt as to the necessity for such a result is eliminated when the acts are considered in their totality. The cumulative effect of such persistent prosecutorial misconduct as to Whitlow, Brewer, Delfino and Gibson made a fair trial impossible and therefore as to these defendants their convictions are reversed and a new trial is ordered. See *Clarquist v. Kirschenman* (1977), 55 Ill. App. 3d 76, 370 N.E.2d 840; *Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 323 N.E.2d 62; *Andes v. Lauer* (1980), 80 Ill. App. 3d 411, 399 N.E.2d 990.

■■ In arriving at the determination that all the convictions of all the defendants except that of Marando should be reversed, this court notes that the greater portion of the prosecutorial misconduct was directed solely at the defendant Gibson. That such was the case is of no consequence since the State prosecuted all defendants for *inter alia* offenses of conspiracy and further submitted and had given to the jury an "accountability" instruction. Throughout the trial and in its brief the State's position has at all times been that the misconduct of one defendant was attributable and should be imputed to the other defendants. In the light of such offenses being charged by the State and its theory of prosecution, the misconduct of the prosecutor, though for the most part directed at only one defendant, served to prejudice all defendants.

Having determined that a new trial is in order, it is necessary that we determine several other issues presented in this appeal.

It is asserted by the defendants Whitlow, Brewer, Delfino and Gibson that the indictment returned against them should have been dismissed

since the only witness appearing before the grand jury was unsworn and as a consequence incompetent to testify.

It is the State's contention that the transcript of the grand jury proceedings was not involved in that the witness was in fact sworn and prior to trial the court was informed that the state's attorney, assistant state's attorney, an assistant Attorney General, and one investigator from the Attorney General's office would so testify. The trial judge accepted the assertion and denied the motion to dismiss the indictment.

■■ The trial court's ruling was correct; however, this court is of the opinion that its ruling should have been predicated upon the grounds that an indictment will not be dismissed on a mere technical error. (*People v. Petropoulos* (1965), 59 Ill. App. 2d 298, 208 N.E.2d 323.) It is not the intention of this court to abrogate the requirement that witnesses should be sworn or that they should make an affirmation to tell the truth, but in the instant case the grand jury transcript was silent as to this matter and hence it is reiterated that a dismissal of the indictment would be predicated upon a "nicety" or technical error, and such practice would not be conducive to the administration of justice.

■■ The defendants further argue that evidence submitted to the grand jury either failed or was insufficient to support the return of an indictment against them. An enlightening case upon this question is *People v. Melson* (1977), 49 Ill. App. 3d 50, 363 N.E.2d 888. As stated in *Melson* this appellate court district adheres to the rule that sufficiency of evidence presented to a grand jury is not listed among the grounds for dismissal set forth in section 114—1(a)(1-10) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—1(a)(1-10)). In view of this rule the defendants' motion to dismiss the indictment was properly denied. See also *People v. Thomas* (1975), 24 Ill. App. 3d 907, 322 N.E.2d 97.

The defendants Whitlow, Brewer, Delfino and Gibson further contend that the trial court erred in denying a motion to dismiss the indictment and in support of this contention present several arguments.

■■ They first assert that counts II through V should have been dismissed in that they fail to allege the element of specific intent. The counts charge the defendants with criminal violation of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1973, ch. 121½, par. 137.12(F), (G), (I)). This precise question has been determined contrary to the views of the defendants in the case of *Home Indemnity Co. v. Reynolds & Co.* (1962), 38 Ill. App. 2d 358, 187 N.E.2d 274. In this case the reviewing court stated:

"Soliciting the sale of an unregistered security is proscribed by the statute. The prohibition against solicited sales is unqualified. No motive, no knowledge that the security is unregistered, no intent to defraud the purchaser, no particular mental state and no specific intent to violate the law is required. The statute was

designed to prevent injury to the investing public and it indicates a legislative purpose to impose absolute liability for its violation." 38 Ill. App. 2d 358, 373, 187 N.E.2d 274, 281.

■■ It should be noted that the statutory provisions which the defendants were charged with violating do not mention specific intent to defraud or knowledge as an element of the offenses. There is precedential authority that where such is the case it is not necessary that the indictment allege the element of specific intent, but it is sufficient if it is proved and that the jury be charged that finding it is essential and a requisite to conviction. *Tallman v. United States* (7th Cir. 1972), 465 F.2d 282; *People v. Vraniak* (1955), 5 Ill. 2d 384, 125 N.E.2d 513.

The defendants further attack counts II through V because they fail to allege who purchased the securities. It is not an all-encompassing rule that every indictment must allege the identity of the victim. *People v. Crouch* (1963), 29 Ill. 2d 485, 194 N.E.2d 248 (forgery prosecution); *People v. Peck* (1963), 29 Ill. 2d 480, 194 N.E.2d 245 (burglary prosecution).

■■ Assuming, however, that the naming of victims in an indictment is essential, then they are properly identified in counts VII through XII in the instant case. The specificity of a charge against an accused must be determined by the reading of the whole document. *People v. Garmon* (1974), 19 Ill. App. 3d 192, 311 N.E.2d 299; *People v. Williams* (1967), 37 Ill. 2d 521, 229 N.E.2d 495.

The defendants also claim that counts II through V fail to state an offense because they are duplicitous.

■■ This attack is aimed at counts II and III, which allege that the defendants made misrepresentations and failed to state material facts between specified dates covering a period of several months. It is the defendants' position that the numerous misrepresentations and omissions alleged to have occurred during this time span (May, June and July of 1973) should have been listed separately. We disagree, since the counts alleged a general course or practice of misconduct over a particular period of time, all of which resulted in defrauding investors. Had each misrepresentation or omission been the subject matter of a separate count, the defendants might now be arguing the converse, to wit, the indictment was complicated to a fault and too repetitious. The counts adequately informed the defendants of the charges against them, and they were protected from double jeopardy resulting from subsequent prosecutions for alleged misconduct within such time span. *Virgin Islands v. Smith* (3d Cir. 1971), 445 F.2d 1089.

It is also argued that several counts of the indictment are constitutionally vague. It is apparent that they quarrel with counts which in one instance allege a number of specific misrepresentations "among others"

and in two other counts which charge omissions of material facts, but the allegations of specific omissions are preceded by the words "included but not limited to the following."

■■ At first blush the complained-of phrases seem to be "catch all" provisions which are vague and which would place the defendants in an uncertain position when attempting to prepare a defense. In examining the counts in full, however, we reach a different conclusion. The alleged misrepresentations and omissions are all of a generic nature, *i.e.*, statements as to how the investors' funds would be invested and failure to state that the defendants had invested money in the corporation and yet were benefiting from the proceeds derived from the sale of stock. These counts also confine the allegations to the time span of May, June, July of 1973. The counts, when read in their full context, adequately inform the defendants of the nature of the charges against them and afford far greater protection from double jeopardy than they would have had the complained-of phrases not been present.

The defendants fault counts IV and V because of the following wording. In count IV the defendants are charged conjunctively with engaging in "transactions, practices *and* courses of business * * * which worked *and* tended to work a fraud and deceit upon the purchasers." (Emphasis added.) Count V charged the defendants conjunctively with employing a "device, scheme *and* artifice to defraud." (Emphasis added.) It is the contention of the defendants that the statutory provisions provide "[a]ny transaction, practice *or* course of business in connection with the sale or purchase of securities which works *or* tends to work a fraud or deceit upon the purchasers * * *." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 121½, par. 137.12(F).

Section 12(I) (Ill. Rev. Stat. 1973, ch. 121½, par. 137.12(I)) prohibits individuals from employing "any device, scheme *or* artifice * * *." (Emphasis added.)

■■ It is argued that an indictment framed in the conjunctive is invalid which is based upon a statute worded in the disjunctive. In support of this contention the defendants cite the case of *People v. Woolfolk* (1973), 11 Ill. App. 3d 911, 298 N.E.2d 14. In *Woolfolk* a defendant's conviction for possession of policy slips was reversed because one count of an indictment was duplicitous in that it listed a number of separate offenses in the conjunctive and in only one count. The opinion in *Woolfolk* stresses that the fatal error was to list a number of offenses in one count. We quarrel not with the holding in *Woolfolk*. In the instant case, however, a different situation is presented in that the statutes in question maintain several acts disjunctively and prescribe that each shall constitute the same offense and is subject to the same punishment. In the light of such a statute

all or any of the acts may be charged conjunctively as constituting a single offense. *People v. Diekelmann* (1937), 367 Ill. 372, 11 N.E.2d 420; *People v. Shaver* (1937), 367 Ill. 339, 11 N.E.2d 400; *People v. Pierce* (1975), 26 Ill. App. 3d 550, 325 N.E.2d 758.

The defendants also directed their attention to counts VII through XI and claim that they fail to state an offense since they do not allege the means or instrument of the offense they seek to charge, to wit, theft by deception. These counts charged the offense in the language of the statute (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(b)). *People v. Kamsler* (1966), 67 Ill. App. 2d 33, 214 N.E.2d 562, upholds the validity of an indictment framed in the language of the statute in question. *Kamsler* speaks for itself, and no beneficial purpose would be served by setting forth herein the reasoning of this applicable case.

■■ It is also contended that counts VII through XI are invalid in that they do not set forth the amount of money involved. We find no merit in this contention since it has been rejected by the reviewing court in *People v. Brouilette* (1968), 92 Ill. App. 2d 168, 236 N.E.2d 12. It is sufficient to allege as was done in the instant case that property of value was taken.

■■ For the reasons stated the trial court correctly denied the motions of the defendants to dismiss the indictment on the various grounds raised and presented for review in this appeal.

The defendants further claim that venue was not adequately proved in counts VIII and X of the indictment. The evidence discloses that the alleged victims paid for the purchase of stock in Royal National in Henry County, not Rock Island County. It is undisputed that venue must be proved before a conviction will be upheld. Both the defendants and the State in support of their respective positions cite what they assert to be precedential case law. We merely note that none of the cited cases address the venue question where the offense charged is theft by deception.

We believe that the question of venue for such an offense as well as the offense of theft is clearly determined by statute.

Our Criminal Code provides:

"16—1 Theft) A person commits theft when he knowingly:

(a) * * *

(b) Obtains by deception control over property of the owner; * * *." Ill. Rev. Stat. 1973, ch. 38, par. 16—1(b).

In regard to venue our Criminal Code provides:

"1—6. Place of Trial) (a) Generally.

Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law. * * *

* * *

(g) Theft.

A person who commits theft of property may be tried in any county in which he exerted control over such property." Ill. Rev. Stat. 1973, ch. 38, par. 1—6(g).

■■ The offenses of theft and theft by deception are exceptions to the general rule that the place of trial is where the offenses were committed, the exceptions being that as to theft or theft by deception venue can be had in a county other than that where the "taking" took place. It can be had in a county where control over the taken property was exerted. While our supreme court set forth no reasoning, this is the result reached in *People v. Brown* (1942), 379 Ill. 262, 40 N.E.2d 66. In *Brown* a conviction in Cook County was upheld where the defendant stole a coat in Lake County.

■■ In the instant case the defendants received checks in Henry County for the purchase of stock; however, they transported these checks to Rock Island County where they were deposited in a bank. The evidence clearly establishes that the defendants had the checks in their control both in Henry and Rock Island Counties and therefore venue was properly had in the latter county.

A number of other issues are presented in this appeal; however, a determination of them is not necessary in view of this court's conclusion that the defendants Whitlow, Brewer, Delfino and Gibson are entitled to a new trial.

As previously set forth, the defendant Marando entered pleas of guilty to counts II through V of the indictment, these counts charging violation of the Illinois Securities Law of 1953. The trial court entered judgment of guilty on these counts and sentenced Marando to concurrent sentences of one to three years on each count. Marando raises a number of issues in this appeal, two of which have already been determined, namely, whether the grand jury process was abused and whether the indictment properly stated offenses. These issues have heretofore been determined and adversely to the defendants Whitlow, Brewer, Delfino and Gibson. The same determination applies to the identical issue posed by Marando.

Marando contends that his guilty pleas and sentences imposed thereon should be vacated since the trial court did not comply with Supreme Court Rule 402 (Ill. Rev. Stat. 1977, ch. 110A, par. 402).

Marando specifically argues that reversible error was committed when he was not advised that consecutive sentences could be imposed, that he was advised that there was a mandatory parole term of three years rather than two years which could be imposed, and that the court was never informed that a plea agreement had been entered into.

■■ It should first be noted that these arguments are raised by Marando for the first time in this appeal. They were not raised in his motion to

withdraw his pleas of guilty filed pursuant to Supreme Court Rule 604(d) which states, "Upon appeal any issue not raised by the defendant in the motion to withdraw the plea of guilty and vacate the judgment shall be deemed waived." (Ill. Rev. Stat. 1977, ch. 110A, par. 604(d).) Marando has in fact waived the alleged errors, but even if such were not the case there is little if any substance to them.

The court's failure to admonish the defendant of the possibility of consecutive sentences when the same were not imposed does not constitute reversible error. (*People v. Waud* (1976), 43 Ill. App. 3d 85, 356 N.E.2d 628; *People v. Mass* (1975), 31 Ill. App. 3d 759, 334 N.E.2d 452; *People v. Cherry* (1975), 29 Ill. App. 3d 929, 332 N.E.2d 55.) Marando was admonished as to a mandatory parole term; however, he was advised that term would be for three years rather than two years. A technical error was committed, but the error was to the benefit of the defendant. Marando does not suggest that he would not have entered pleas of guilty had he known that the parole term would have been lesser than that which he was told to expect. Marando complains about erroneous admonishment that benefited rather than prejudiced him.

That the plea agreement was not revealed to the court does not constitute reversible error when Marando was sentenced in accordance with the agreement. Marando makes no claim that his sentences were in any way different from those agreed upon, so if there was any error it was harmless. *People v. Dudley* (1974), 58 Ill. 2d 57, 316 N.E.2d 773; *People v. Talbot* (1973), 9 Ill. App. 3d 688, 292 N.E.2d 561.

■■ The defendant Marando also assigns as error the failure of his attorney to comply with that portion of Supreme Court Rule 604(d) which requires that a certificate be filed with the trial court in which it is stated that counsel has conferred with his client in order to ascertain the client's contention of error regarding his entry of a guilty plea. (Ill. Rev. Stat. 1977, ch. 110A, par. 604(d).) The filing of such a certificate is required of appointed counsel, and in the instant case Marando was represented by private counsel. Even if this requirement related to private counsel, the failure to file the certificate is harmless error where counsel had in fact conferred with his client as required by Supreme Court Rule 604(d). Marando does not contend that his counsel failed to confer with him and in other respects comply with the rule, so the claim of error by Marando is without merit. *People v. Thompson* (1978), 57 Ill. App. 3d 100, 372 N.E.2d 1105.

■■ Marando vigorously argues that he was not afforded effective assistance of counsel. The defendant Marando being represented by private counsel, the test is whether the representation afforded is of such low caliber as to amount to no representation at all or reduces the court proceedings to a farce or a sham. (*People v. Murphy* (1978), 72 Ill. 2d 421,

381 N.E.2d 677; *People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142.) The record in this case belies the fact that counsel for Marando afforded him representation that reduced his trial and court proceedings to a farce or a sham. On the contrary, prior to his trial being severed from that of the co-defendants, the record gives the impression that Marando was astutely represented. His counsel cross-examined the lengthy array of State witnesses and produced witnesses in behalf of Marando whose testimony provided Marando with a defense. After his case was severed from that of the other defendants, Marando voluntarily accepted the terms of a plea agreement arranged by his counsel. He now claims that he never understood the nature of the case. Such an assertion is difficult to accept in light of his presence for approximately three weeks during the course of a trial in which he was a defendant. He cites the alleged errors pertaining to Supreme Court Rules 402 and 604 as examples of his counsel's incompetence; however, we have determined these errors to be of technical nature having no prejudicial effect. Marando for a long period of time was represented by counsel of his own choice, and he now complains that after pleading guilty and being sentenced his counsel failed to produce two witnesses at hearings on his motion for continuance on the hearing to vacate the guilty plea he entered. He classifies these witnesses as being essential, yet he fails to inform this court as to what essential testimony he hoped to adduce from the witnesses. Errors in judgment or strategy do not establish incompetency. (*People v. Murphy*; *People v. Torres*.) The conduct of Marando's counsel falls far short of reducing the court proceedings to a farce or sham.

Lastly, Marando contends that he was the least culpable of all the defendants and that the court should reduce his sentence or order a remand to the trial court for the purpose of resentencing. In support of his "least culpable" argument Marando states that he is approximately 20 years younger than the other defendants, that he was not an incorporator of Royal National, he did not have access to the books and records of the corporation, that from his activities he realized only commissions from the sale of the stock, he acted under the direction of the other defendants, and he was the only one to plead guilty.

Marando in age is considerably younger than the other defendants, yet he has attained his legal majority, being 24 years old. As he claims, he was the only defendant to plead guilty, and he considers this act merits a sentence of a lesser degree than that imposed on the other defendants who demanded and received a complete trial by jury. Such result is not uncommon, but receiving a lesser sentence because one pleads guilty is not a matter of right guaranteed by the law of our State. To a slight degree Marando did receive lesser sentences in that he

was sentenced on a lesser number of counts and no fine was imposed as was done to the defendant Gibson.

While not an incorporator or officer of Royal National, Marando in selling stock to various investors repeatedly informed them that he was a corporate officer, to wit, a senior vice president, vice president or junior vice president. He signed receipts with these assumed titles. It should further be noted that he had personal contact with the majority of the investors and made the initial contact with at least eight of them. Marando persistently made misrepresentations to the investors as to the stock going public and that the incorporators had invested heavily in the corporation.

It is true that his only monetary benefit from Royal National was from commissions earned, yet there is little if any credible evidence to support his claim that he was under the domination and control of the other defendants. The record on the contrary establishes that he was an aggressive, tireless and persuasive salesman. In considering Marando's culpability, we deem it significant that in 1975 in the State of Indiana he pleaded guilty to the offense of theft by deception and received a suspended sentence of one to five years' probation. While the amount involved in the Indiana offense might well be considered trivial, it demonstrates a propensity to obtain money by illegal means.

■■ We can only conclude that the judgments of guilty entered against the defendant Marando and the sentences imposed thereon should not be disturbed.

During the course of this appeal several motions were filed by the parties which were taken with the case. One was a motion by the defendant Gibson praying for leave to file a reply brief in excess of 27 pages. The State filed a brief to supplement its brief. The ruling of this court on these motions is that the same are allowed.

For the reasons set forth the judgments of guilty of the defendants Whitlow, Brewer, Delfino and Gibson and the sentences and fine imposed thereon by the circuit court of Rock Island County are reversed and vacated. As to these defendants, this case is remanded for a new trial.

As to the defendant Marando, the judgments of guilty entered against him and the sentences imposed thereon are affirmed.

Affirmed in part and reversed in part with directions.

Mr. JUSTICE STOUDER, concurring in the decision:

I concur in the affirmance of the conviction of defendant Marando and the reasons expressed for such affirmance, and since Judges Scott and Barry agree that counts II through V state a cause of action, and since I agree with Judge Scott that the conduct of the prosecution warrants a

new trial, I concur in the reversal and remandment with respect to the other defendants. However, I am not convinced that counts II through V state an offense. These counts charge the defendants with violations of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1973, ch. 121½, pars. 137.12(F), (G), (I)). The problem arises because these counts fail to allege specific intent. If the provisions are absolute-liability provisions, then this failure does not affect the validity of these charges. If the provisions are not absolute-liability provisions, then the failure to allege specific intent is fatal to the indictment and the charges must be dismissed.

The Illinois Criminal Code states that an offense is an absolute-liability offense when "the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." (Ill. Rev. Stat. 1973, ch. 38, par. 4—9.) Thus, we must determine whether there was legislative intent to impose absolute liability in criminal cases under section 12. I believe there was none.

The language of sections 12(F), (G) and (I) are virtually identical with the antifraud provisions of the Federal Securities Act of 1933 (15 U.S.C. §77g), and therefore I believe that the standards applicable to the Federal act are equally applicable to the Illinois act. It is well established that under the Federal antifraud provisions there must be specific intent to defraud. (*Sparrow v. United States* (10th Cir. 1968), 402 F.2d 826; *Frank v. United States* (10th Cir. 1955), 220 F.2d 559; *Troutman v. United States* (10th Cir. 1938), 100 F.2d 628.) Therefore, I believe that, to charge the defendants with fraud, the government must allege an intent to defraud or, at the very least, scienter.

Judges Scott and Barry apparently conclude that the statute is an absolute-liability statute, and *Home Indemnity Co. v. Reynolds & Co.* (1962), 38 Ill. App. 2d 358, 187 N.E.2d 274, is cited as authority for this position. However, *Home Indemnity Co.* is a civil case, not a criminal case. While I would agree that the statute calls for absolute liability in a civil case, there is no evidence that the legislature intended it to be so in a criminal case. In the absence of a clear intent to make it an absolute-liability provision, it cannot be so considered.

The majority further states that, regardless of whether or not the indictment needed to allege specific intent, there is precedent to the effect that it is sufficient if the intent is proved and the jury charged that finding is essential and a requisite to the conviction. The majority cites *Tallman v. United States* (7th Cir. 1972), 465 F.2d 282, and *People v. Vraniak* (1955), 5 Ill. 2d 384, 125 N.E.2d 513, for this proposition. Neither case is apposite.

In *Tallman* the defendant failed to object to the indictment prior to trial and was collaterally attacking it. The court there held that where the intent was proved and the jury properly instructed, the indictment could

not be collaterally attacked. In the instant case, there was a timely motion to dismiss the indictment. Because it failed to allege specific intent, the indictment should have been dismissed at that time. Therefore, whether or not intent was later proved and the jury properly charged is irrelevant.

In *Vraniak* the defendant moved to dismiss the indictment for failing to allege intent. The court denied the motion, saying that the offense the defendant was charged with did not require intent. Since the offense in the instant case requires intent, *Vraniak* is clearly inapposite.

Therefore, since the indictment needed to allege specific intent and did not, the defendants' motion to dismiss it should have been granted. It is for this reason that I would simply reverse the lower court's decision.

Mr. JUSTICE BARRY, dissenting:
I respectfully dissent from the majority's reversal of the convictions of the defendants, Whitlow, Brewer, Delfino and Gibson. I disagree with the conclusion of the majority that the alleged misconduct, which is comprised of various statements made by the prosecutor in opening and closing arguments and the prosecutor's actions, otherwise mandates a reversal and remandment for a new trial.

This was a well-handled extended trial complicated by five defendants being tried together and represented by different attorneys. The alleged prejudicial conduct and comments of the prosecutor occurred in the context of a very lengthy, hotly contested and hard-fought trial. As emotions rise in the heat of such a trial the likelihood of injudicious and even unfair conduct or comment occurring is great. However, convictions are not reversed simply because either or both sides made a few comments which would have been better not made. (*People v. Harris* (1975), 33 Ill. App. 3d 600, 338 N.E.2d 129.) Not every improper conduct or argument should result in reversal of a conviction.

As the Illinois Supreme Court has stated, " 'Where it appears that improper remarks do not constitute a material factor in the conviction * * * the verdict will not be disturbed.' *People v. Berry* (1960), 18 Ill.2d 453, 458." (*People v. Dukett* (1974), 56 Ill. 2d 432, 443, 308 N.E.2d 590, 596.) A reviewing court will reverse a conviction only if it determines that the verdict would have been different had the objectionable conduct or remarks not occurred. (*People v. Hastings* (1979), 72 Ill. App. 3d 816, 390 N.E.2d 1273.) I have reviewed the lengthy record and do not find that the comments and conduct were of such substantial magnitude as to warrant a new trial in this case. The allegedly improper conduct and comments did not substantially prejudice the defendants, nor did they constitute, either individually or collectively, a material factor from which the convictions resulted.

The evidence of guilt was overwhelming, and the briefs of some of

the defendants suggest the guilt of others. Any effect of the complained-of conduct and comments upon the jury was insignificant and did not result in prejudicing the defendants or in depriving them of a fair trial.

As has often been said, defendants cannot expect a perfect trial. I do not believe the argued conduct or comments influenced the jury in returning the guilty verdicts. "Where there is clear and convincing evidence of guilt, such comments will not require a reversal where it does not appear that they prejudicially influenced the jury or that the verdict would have been otherwise had the remarks not been made." *Harris*, 33 Ill. App. 3d 600, 605, 338 N.E.2d 129, 133.

I find no reversible error and would affirm the judgments of conviction.